HEUBLEIN et al. v. ADAMS et al.

(Circuit Court, D. Massachusetts. November 9, 1903.)

No. 1,455.

1. TRADE-MARK—"CLUB" COCKTAILS—PROPRIETY OF DESIGNATION.
    The word "Club," as applied to a brand of cocktails, is not a term of description, but an application of a common word to a commercial article in an arbitrary or fanciful sense to indicate origin or ownership, and is consequently appropriate as a trade-mark.

¶ 1. Arbitrary, descriptive, or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 323.

**2. SAME—PRIOR APPROPRIATION—SUFFICIENCY OF EVIDENCE.**

In 1892 complainants adopted, and have since used, the term "Club Cocktails" as a distinguishing trade-name for their bottled cocktails. About 1892, and perhaps earlier, a limited quantity of bottled cocktails was put on the market under the name of "Outing Club Cocktails," but these goods made little or no impression on the trade, and the use of the name was in the nature of an experiment, and was transitory and inconsiderable. In 1898 the manufacturer of the "Outing Club Cocktails" caused to be inserted in Mida's Register a label on which those words appeared, with the statement, "Used since 1894." *Held*, that the evidence did not establish any commercial use of the word "Club," as applied to cocktails, sufficient to show an appropriation thereof as a trade-name prior to complainants' adoption thereof.

**3. SAME—UNFAIR COMPETITION.**

In 1892 complainants began the use of the phrase "Club Cocktails" as the distinguishing trade-mark for their goods. Several years later the defendants began selling bottled cocktails under the name "Boston Cocktails," and in 1900 adding the word "Club," calling their product since that time "Boston Club Cocktails." Complainants built up an extensive trade in "Club Cocktails," both in this country and abroad, and their goods received a universal trade recognition, and completely occupied the market. Defendants' reason for incorporating the word "Club" in the name of their product was that they heard some other dealer was using their original designation. On two occasions defendants filled orders for "Club Cocktails" by furnishing their own goods. There is no similarity between the label and the size and color of the bottles used by the respective parties. *Held*, that the defendants' adoption of the word "Club" constituted unfair competition entitling complainants to an injunction.

In Equity.

Hiram R. Mills and N. L. Frothingham, for complainants.

John Lowell and Jesse C. Ivy, for defendants.

COLT, Circuit Judge. This is a bill for infringement of a trade-mark and to restrain unfair competition in trade. The material facts disclosed by the proofs may be summarized as follows: Since 1892 the complainants have adopted "Club Cocktails" as the distinguishing trade-name for the cocktails which they put up in bottles and sell to the trade. Several years later the defendants began putting up and selling bottled cocktails under the name "Boston Cocktails." In 1900, however, they added to this name the word "Club," and since that time they have called their product "Boston Club Cocktails." "Club Cocktails" was registered in the Patent Office by the complainants as their trade-mark on June 23, 1896, upon an application filed October 5, 1893. These words were also registered and published as complainants' trade-mark in the recognized trade publication known as "Mida's Register." The complainants have built up an extensive trade in "Club Cocktails," not only in this country, but in most of the foreign markets of the world. They have spent over $125,000 in advertising, and their business has grown to be of large value. Their use of this trade-name since its adoption in 1892 has been continuous, uniform, and notorious. It has been substantially an uninterrupted and exclusive use. The complainants' goods have received a universal trade recognition, and, in a broad commercial

¶ 3. Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

sense, have completely occupied the market. "Club Cocktails" mean in the trade only the cocktails made by the complainants. It is true that about 1892, and perhaps earlier, there were put upon the market in limited quantities bottled cocktails under the name of "Outing Club Cocktails." These goods, however, may be said to have made little or no impression upon the trade. The use of this name seems to have been in the nature of an experiment, and it was at most transitory and inconsiderable.

While the form and appearance of defendants' labels and the size and color of their bottles are unlike the complainants', it appears that the distinguishing feature by which complainants' cocktails are commercially known resides in the word "Club," and not in the dress of the goods. These goods are advertised in newspapers, periodicals, and booklets simply as "Club Cocktails." They are ordered under this name by dealers and consumers, and they appear under this name on current wine lists, both of merchants and others. In other words, complainants' cocktails are identified, recognized, and known in the trade and by the public solely by the word "Club."

The only reason which defendants give for incorporating the word "Club" into the name of their cocktails is that they heard some other dealer in Boston was using the name "Boston Cocktails," and they intended by this change to avoid confusion in the trade. At the same time they say that "Club," as applied to cocktails, was in common commercial use. It also appears that upon two occasions the defendants filled orders, one by letter and the other verbal, for "Club Cocktails," by furnishing their own goods; and in one of these instances it was stated by the clerk in their employ that their goods were the only "Club Cocktails" on the market.

The complainants contend, first, that they have a technical trademark or trade-name in "Club Cocktails"; and, second, if they have not an exclusive property in these words, that their use by the defendants is an unfair interference with their trade, and calculated to deceive the public. Upon full consideration it seems to me that the term "Club Cocktails," as applied to a commercial article in the form of bottled cocktails, may be rightfully appropriated as a trade-mark. These words respond to all the tests of a valid trade-mark. They are not a geographical name, nor a personal name, nor are they descriptive within the meaning of the trade-mark law. "Club," in this connection, is the application of a common word to a commercial article in an arbitrary or fanciful sense, to indicate origin or ownership. When applied to liquors, cocktails, or other articles, "Club" may be suggestive of excellence or quality, but this does not make it descriptive within the law. Many trade-marks are suggestive of quality. Nor is the use of "Club" in this connection descriptive in the sense that it designates an article made by a social organization known as a club. Such use is no more descriptive than "Club Skates," "Club Guns," or "Club Saddles" would be descriptive. Social clubs are not engaged in the business of putting bottled cocktails on the market, any more than athletic clubs are engaged in the manufacture and sale of skates, guns, or saddles. To render "Club" descriptive in this sense, there must be added the name of a particular club, as, for in-

stance, Manhattan, Somerset, Hartford; and no such organization could properly apply the word "Club" to its own manufacture or product as an article of commerce without the addition of its own specific name. Because a common word like "Club" may become descriptive when used in combination with a particular name, and because others may have a right to use it when so combined, does not render it, in my opinion, incapable of appropriation as a trademark. I see no reason, therefore, why "Club Cocktails" may not be appropriated as a trade-name, since the words are not descriptive, since they are used in a purely arbitrary sense, and since they were originally adopted to indicate the origin or ownership of the commercial article to which they are applied.

Upon the question of the first appropriation of "Club Cocktails" as a trade-name, I find that the use of this name in connection with "Outing Club Cocktails" was so transitory, spasmodic, and inconsiderable, as contrasted with the long-continued, notorious, and universally recognized use by the complainants, that the case at bar clearly falls within the doctrine laid down by the Circuit Court of Appeals for this circuit in the case of Levy v. Waitt, 61 Fed. 1008, 10 C. C. A. 227, 25 L. R. A. 190. The complainants adopted "Club Cocktails" as the distinguishing mark for their goods in September or October, 1892. In 1898—five years later—the Otis S. Neale Company, of Boston, caused to be inserted in Mida's Register a label on which appears the words "Outing Club Cocktails," with the accompanying statement, "Used since 1894." This published notice to the world that the use of "Outing Club Cocktails" began in 1894 raises a strong presumption against any intention to appropriate this name at an earlier date. It may be that a few bottled cocktails having this brand were put up at an earlier date, but I do not think the evidence establishes any commercial use of this name sufficient to overcome the date deliberately fixed in Mida's Register.

The essential nature of all trade-mark suits is the same, whether they rest upon infringement or upon unfair competition. At the foundation of the law lies the rule that every person should so use his own property as not to injure the property of another. The essence of the wrong consists in the sale of the goods of one person as those of another, thereby misleading the public and injuring the business of another. It is only when this false representation is directly or indirectly made that a court of equity will grant relief. Canal Company v. Clark, 13 Wall. 311, 20 L. Ed. 581; Paul on Trade-Marks, § 7, p. 34. Every trade-mark case is based upon fraud, actual or constructive. In technical trade-mark cases fraud is presumed, while in cases of unfair competition the plaintiff must prove a fraudulent intention, or show facts or circumstances from which it may reasonably be inferred. Paul on Trade-Marks, § 210. The proofs essential to make out a case of unfair competition depend upon the nature of the trade-mark. Where the mark is in the form of a label, it is necessary to show such a simulation of it as would be likely to mislead the public. Where the mark is in the form of a trade-name, and consumers have come to recognize the particular goods by that name,

125 F.—50

rather than by their dress, then the difference in the label or wrappings becomes immaterial.

Turning to the case at bar, I find that the complainants' goods are bought and sold under the trade-name "Club Cocktails." The word "Club" is a kind of catch-word by which these goods are known in the trade and among consumers; consequently the difference in the defendants' labels and the size and color of the bottles they use is unimportant, and does not touch the real issue in the case. Again, the defendants are not a club, and the reasons which they give for adopting this word, after the complainants' goods had acquired a wide reputation on the market, are inconsistent and unsatisfactory. Assuming, however, that the word was innocently adopted by the defendants, it still remains true that the effect of such adoption must be, upon all the facts and circumstances disclosed in the proofs, to deceive the public and to injure a rival manufacturer. The evidence specifically shows that in two instances, upon an order given for "Club Cocktails," the defendants supplied their own article. Independently, therefore, of the question whether the complainants have a technical trade-mark in "Club Cocktails," I am of the opinion that the defendants should be restrained from the use of the word "Club" as a distinguishing mark for their cocktails, upon the ground of unfair competition in trade.

Decree for complainants.