THOMAS G. CARROLL & SON CO. v. McILVAINE & BALDWIN, Inc.

(Circuit Court, S. D. New York. June 23, 1909.)

1. TRADE-MARKS AND TRADE-NAMES (§ 45*)—TITLE—EFFECT OF REGISTRATION.
    Registration of a trade-mark cannot confer title, if some other individual by prior adoption and use has acquired a common-law title.

    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 53; Dec. Dig. § 45.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. TRADE-MARKS AND TRADE-NAMES (§ 21*)—TITLE—CONTEMPORANEOUS USE.

Where the same trade-mark is used by different persons in the same line of business, and operating partly at least in the same territory, the exclusive use is awarded to him who first devised and used the same, provided he asserts his rights without laches.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 24; Dec. Dig. § 21.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 21*)—TITLE—"BALTIMORE CLUB" WHISKY.

The right to the use of the name "Baltimore Club" as a trade-mark for rye whisky *held* to be in defendant on the ground of prior use, although both parties had used it continuously for many years, but in different localities.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 24; Dec. Dig. § 21.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 1*)—NATURE.

A trade-mark merely distinguishes and designates the business in which it is used, and it is the business which is to be protected, and not the trade-mark as a mere collocation of words or symbols.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 1; Dec. Dig. § 1.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 84*)—INFRINGEMENT—RIGHT TO INJUNCTION.

Complainant and its predecessors in Baltimore, and defendant and its predecessors in New York City, each for more than 30 years produced and sold a rye whisky under the name of "Baltimore Club." Complainant's business was chiefly local, and did not extend to New York City until shortly before the commencement of this suit, when it placed its goods in the market there. Defendant's business was larger, and whatever reputation or value attached to the name in New York was due to its efforts and its goods. *Held*, that complainant, even if conceded priority of use in the limited area of its business, had no standing to enjoin defendant's use in New York, since that would be to further the deception of the public there, which it is the primary object of equity in such cases to prevent.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 90; Dec. Dig. § 84.*]

In Equity. On final hearing.

Goepel & Goepel (Mr. Cozzens, of counsel), for complainant.

Parsons, Closson & McIlvaine (Mr. McIlvaine, of counsel), for defendant.

HOUGH, District Judge. The complainant is a corporation which has succeeded to and now owns a business founded in Baltimore by one Carroll in 1870. The defendant is a corporation which has succeeded to and now owns a business founded by one McIlvaine in New York in 1865. Both businesses have been continuous, and that of the defendant has for many years been well and favorably known in New York City. The complainant's business appears from the evidence to have been of smaller volume, but to have been well known in Baltimore.

The parties to this litigation and their predecessors have both, during all the periods above alluded to, been engaged in the business (inter alia) of selling whisky. In 1874 the original Carroll registered

as a trade-mark under Act July 8, 1870, c. 230, § 77, 16 Stat. 210, the words "Baltimore Club" in connection with the words "Warranted Pure Rye Whisky," declaring in his affidavit that he had used this trade-mark in connection with "a high-class article of pure rye whisky" for more than 4 years. In 1881 the same Carroll registered the same trade-mark under Act March 3, 1881, c. 138, 21 Stat. 502 (U. S. Comp. St. 1901, p. 3401), declaring that "he had continuously used the same in his business for 11 years," and that the particular description of goods to which this trade-mark was appropriated was "rye whisky." In 1907 the present complainant registered as a trade-mark the words "Baltimore Club," declaring that the same had been continuously used in its business and that of its predecessors since 1870, and that the goods to which it was appropriated were "rye whisky." This course of registration is in my opinion sufficient to show that the complainant and its predecessors have persistently asserted right to the words "Baltimore Club" as a trade-mark for certain rye whisky sold by them in Baltimore. The testimony convinces me that their volume of trade was never large, and that until in very recent years they never obtained (if, indeed, they sought) any market for their liquor of this brand in or near New York City.

The view of the testimony most favorable to the complainant is that at least as early as 1875 the defendant's predecessors had a large local trade in New York in a brand of whisky known as "Baltimore Club," and also well known to be sold only by McIlvaine & Baldwin (a partnership at that time). Such trade has continued (if not enlarged) down to the time of the beginning of this suit. It is likewise a view of the testimony as favorable as the complainant could ask that down to about 1882 or 1883 the Carroll firm sold Baltimore Club whisky in Baltimore, and the McIlvaine & Baldwin firm sold whisky under the same trade-mark in New York, and neither knew of the other's existence nor interfered with each other's customers. There is some testimony that at the date last mentioned the original Carroll, accompanied by his sons, came to New York, and, having then or earlier learned of the existence of McIlvaine & Baldwin's Baltimore Club, called at the latter's place of business and laid claim to the trade-mark as the property of the Carroll firm. This is testified to by the only survivor of the parties to the conference.

Whatever threats or demands were made by the Carrolls at this time, they certainly bore no fruit; for each party continued to transact his business as before until shortly prior to the beginning of this action in 1907. By this time the founders of both businesses were dead. The complainant then made efforts to sell its Baltimore Club whisky in New York, and did sell some of it under a bottle label of which it is sufficient to say that it is an imitation of the label used for many years by the defendant and its predecessors, an imitation evidently calculated to deceive any but the most discriminating purchasers, and bearing no other resemblance to the trade-mark registered by defendant and its predecessors than the words "Baltimore Club" in different type and different color, and also bearing no resemblance at all to the bottle label used for a considerable period (though exactly how long is not shown) by the complainant in its established Baltimore

trade. These New York sales under an imitated label gave rise to some correspondence between the parties hereto, in which complainant declared that the alleged imitation of label would "not be discussed" further than to say that complainant regarded the words "Baltimore Club" as (its) exclusive property, conferring upon it the "right and liberty * * * of printing [said words] in any style or color" it preferred; and to substantiate this assertion of right the present suit was brought.

The complainant gives undue weight to the series of registrations above set forth. Property right in a trade-mark exists at common law and is independent of the statutes regulating registration. Under the present trade-mark act a certificate of registration is prima facie evidence of ownership; but this evidence may be contradicted in court, and the apparent right of the registering party shown not to exist. Registration cannot confer a title to a trade-mark, if some other individual has acquired a prior right by adoption and use; nor can it vest a title in the registrant as against another's common-law title. Glen Cove Mnfg. Co. v. Ludeling (C. C.) 22 Fed. 823; La Croix v. May (C. C.) 15 Fed. 236; Ohio Baking Co. v. National Biscuit Co., 127 Fed. 116, 62 C. C. A. 116. The fundamental inquiry, therefore, in this case (as in most others relating to property in trade-marks), is: To which of the contending parties should judicial protection be granted upon the ground that he first produced or brought into the market an article of consumption that has found favor with the public, and first affixed thereto some name or symbol which serves to distinguish it as his?

To him who first did bring the article into the market and did first affix a distinguishing name or symbol should be granted protection, to the end that no other shall deceive or mislead the public and injure the first introducer by appropriating said distinguishing mark or any colorable imitation thereof. Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993. The owner of a trade-mark has no estate in the trade-mark as such, nor does registration confer upon him any monopoly. His position bears no resemblance to that of a patentee. He is entitled to legal protection for his trade-mark only because by granting the same the courts protect the business designated or indicated to the public mind by the trade-mark. It is for this reason alone that, where the same trade-mark is used by, different persons in the same line of business and operating (partly at least) in the same territory, the exclusive use thereof is awarded to him that first devised and used the same. Upon the assumption, therefore, that the parties to this litigation are vending or trying to vend the same article in the same place under the same name, the question must be settled whether the founder of complainant's business or the founder of defendant's business first adopted and used the trade-mark "Baltimore Club" as applied to rye whisky.

It is established by his own declaration that the original Carroll began to sell Baltimore Club whisky not earlier than 1870, and it is in my opinion established by the oral evidence herein that the original McIlvaine sold Baltimore Club rye whisky and obtained a considerable market for the same as early as 1868. This finding of fact is enough

to dispose of this case; but there are, in my judgment, other reasons for dismissing the complaint, which may be stated.

Upon any view of the evidence herein the defendant and its predecessors for more than 30 years before the beginning of this suit had widely sold and extensively advertised in New York their Baltimore Club rye. They made a market for it. They made the trademark known in a densely populated community and among a portion of that community whose trade was and is very desirable. Whatever value attaches to the trade-mark in New York at all events is due to no business effort of the complainant, or its acts in putting certain words on record in the United States Patent Office. The defendant's trade under the trade-mark in dispute is and long has been confessedly much larger than the complainant's trade under the same trade-mark.

This case, therefore, presents an unusual inversion of the rule that a limited use in a small area does not give a party trade-mark rights as against other interests in other sections of the country, where no deception would be likely to result. The unusual condition rests in this: That this complainant, who has brought about a comparatively small use of Baltimore Club rye, now asserts a right to extinguish or appropriate a much larger business, which with or without its knowledge is the result of upwards of 30 years of effort on defendant's part. To grant an injunction under such circumstances would be to disregard the most important branch of the equitable rule invoked. The injunction in trade-mark cases is primarily designed to prevent the public from being misled and deceived, and to enjoin these defendants from using the words "Baltimore Club" in favor of this complainant would be to further the deception (in this jurisdiction at all events) which it is the object of equity to prevent.

In Corwin v. Daly, 7 Bosw. (N. Y.) 222, the defendant had introduced "Club House Gin" into California, shipping it from New York. The complainant, who had previously vended gin under the same name in this city, endeavored to prevent it; and the court remarked:

"Defendant's wares are intended for, shipped to, and circulate in the California market alone, where only recently the complainants have followed them. The latter cannot claim their trade-mark to be prior in time there. They have not monopolized all the markets in the world, and cannot exclude the defendant's wares."

The same doctrine (in more modern form) is well illustrated in Tetlow v. Tappan (C. C.) 85 Fed. 774. In that case a large manufacturer, after he had established a trade-mark, discovered that the same mark had long been used for the same purpose by a small dealer with a small trade in a distant city, and he thereupon paid that small dealer (in effect) not to enlarge his use of said trade-mark. But this recognition of an apparently prior right was held not to invalidate the large manufacturer's title as against a proven invader of the manufacturer's business. The facts of this case (of which the writer had personal knowledge) are a good illustration of the rule that the trade-mark merely distinguishes and designates the business, and it is the business which is to be protected, not the trade-mark as a mere col-

171 F.—9

location of words or symbols. There is nothing sacred about such words or symbols.

And, finally, in any view of the testimony, the decision in Macmahan Pharmacal Co. v. Denver Chemical Co., 113 Fed. 468, 51 C. C. A. 302, is decisive against this bill. It is possible that here, as in the case cited, the defendant's predecessor, in ignorance of Carroll's acts or Carroll's business, adopted Carroll's words, and with those words as a signboard built up a large trade and acquired public reputation; but in this case, as in that, it must be held that, regardless of priority of adoption of words which are worthless without a business, the complainant never acquired the exclusive right to use the words in question, "Baltimore Club," as a trade-mark, and the bill must therefore be dismissed.

It is not thought necessary to discuss the imputations cast upon complainant, and based on its obvious imitation of defendant's bottle label. This case has been presented and tried on the theory that the alleged prior adoption and undoubted registration of trade-mark necessarily gave a universally exclusive right of use to the complainant, in the United States at all events. This contention I believe unfounded, because, first, complainant's predecessor did not first adopt the trade-mark, and, second, even if he did, such adoption in 1870 conferred (under the facts of this case) no exclusive rights as against this defendant when suit was begun in 1907.

The bill is dismissed, with costs.