OLD LEXINGTON CLUB DISTILLERY CO. v. KENTUCKY DISTILLERIES & WAREHOUSE CO.

(District Court, D. New Jersey. July 22, 1916.)

1. TRADE-MARKS AND TRADE-NAMES �köm3(5), 9—GEOGRAPHICAL AND DESCRIPTIVE WORDS—OLD LEXINGTON CLUB.

The words "Old Lexington Club," as applied to whisky, are the subject of trade-mark, as against objection that the word "Lexington" is geographical, and the word "Club" descriptive of quality; there being no evidence of the latter fact.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 7, 13; Dec. Dig. ⊙⟶3(5), 9.]

2. TRADE-MARKS AND TRADE-NAMES ⊙⟶43—RIGHT TO REGISTER—IDENTICAL NAMES.

Plaintiff's trade-mark, "Old Lexington Club," and defendant's "Lexington Club," used in the same trade, will be considered identical as regards plaintiff's right to register his, over objection of defendant.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 48, 49; Dec. Dig. ⊙⟶43.]

3. TRADE-MARKS AND TRADE-NAMES ⊙⟶43—RIGHT TO REGISTER—ESTOPPEL.

On the ground of estoppel, plaintiff will not be adjudged entitled to register his trade-mark, which he first adopted and used, where for 15 years he knew of, and took no steps to prevent, its use by defendant, there having been no actual fraud in defendant's adoption and use thereof, and it having in such time built up a business more extensive and wide than that

of plaintiff's; registration of a trade-mark under Trade-Mark Act Feb. 20, 1905, c. 592, § 16, 33 Stat. 728 (Comp. St. 1913, § 9501), being prima facie evidence of ownership, which would damage defendant, so entitling him under section 6 (section 9491) to oppose the registration.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 48, 49; Dec. Dig. ☞43.]

In Equity. Bill by the Old Lexington Club Distillery Company against the Kentucky Distilleries & Warehouse Company to secure an adjudication that plaintiff is entitled to register the words "Old Lexington Club" as a trade-mark for whisky. On final hearing. Bill dismissed.

John M. Coit, of Washington, D. C., for plaintiff.

Hal C. Bangs, of Chicago, Ill., and Charles C. Deming, of New York City, for defendant.

HAIGHT, District Judge. The plaintiff, claiming to be the owner of a trade-mark for whisky, consisting of the words "Old Lexington Club," filed an application in the Patent Office for the registration thereof, pursuant to Act Feb. 20, 1905, 33 Stat. 724. The defendant opposed the registration upon the ground that it was the owner of a trade-mark for whisky consisting of the words "Lexington Club," and that a trade-mark so similar to it as "Old Lexington Club" would be likely to cause confusion or mistake in the mind of the public and thus injure the defendant. The examiner, to whom the question thus raised was referred, found priority in adoption and use in the plaintiff. The defendant thereupon appealed to the Commissioner, who affirmed the judgment of the examiner. Thereafter the defendant prosecuted an appeal to the Court of Appeals of the District of Columbia, which reversed the former judgments, upon the grounds (1) that the proposed trade-mark consisted merely of the name of the plaintiff corporation; and (2) that it was but a combination of words in ordinary use as descriptive adjectives—"Lexington" being geographical, and "Club" descriptive of quality or grade. Kentucky Distilleries & Warehouse Co. v. Old Lexington Club Distilling Co., 31 App. D. C. 223. About a year after that decision was rendered the plaintiff filed this bill; the authority for doing so being section 4915 of the Revised Statutes (Comp. St. 1913, § 9460), and section 9 of the Trade-Mark Act of 1905 (Comp. St. 1913, § 9494). Atkins v. Moore, 212 U. S. 285, 29 Sup. Ct. 390, 53 L. Ed. 515. A demurrer was interposed to the bill, but the same was overruled by the late Judge Cross. The defendant does not here urge the first of the grounds relied upon by the Court of Appeals of the District of Columbia, presumably both because Judge Cross held that the proposed trade-mark did not appear to consist merely of the name of a corporation, and because, subsequent to the decision of the Court of Appeals, the Trade-Mark Act was amended to provide that the registration of a trade-mark, otherwise registerable, should not be denied because of its being the name of an applicant or a portion thereof. Act Feb. 18, 1911, c. 113, 36 Stat. 918; Act Jan. 8, 1913, c. 7, 37 Stat. 649 [Comp. St. 1913, § 9490].

234 F.—30

[1] The second ground relied upon by the Court of Appeals is, however, advanced in this case. Whatever may have been before that court, there is no evidence in the record here to justify the conclusion that the word "Club," as applied to liquors, is indicative of quality or grade, but, on the other hand, the only evidence is to the contrary. It does not appear, therefore, that this word has acquired in the liquor trade a generic meaning. While the word "Lexington," standing alone, might denote the geographical origin of a product, and hence not be the subject of exclusive appropriation as a trade-mark, it by no means follows that its use, in combination with other words, would denote simply the place of manufacture. As the word "Club" does not indicate the quality or grade, and as social clubs are not engaged in the manufacture of liquor, I fail to see how the words "Old Lexington Club" can, in any sense, be considered as signifying that the product so marked was manufactured at Lexington, Ky., or indicate its quality or characteristics, or be viewed as anything other than a fanciful designation, arbitrarily selected to designate the product of plaintiff and its predecessors. If the phrase were "Old Lexington Whisky," a different situation would probably be presented.

These views, I think, are in harmony with those expressed by Mr. Justice Pitney in the recent case of Hamilton-Brown Shoe Co. v. Wolf Brothers & Co., 240 U. S. 251, 36 Sup. Ct. 269, 60 L. Ed. 629. The words "Maryland Club," as applied to whisky, were evidently considered as a valid trade-mark by both Judge Hough and the Circuit Court of Appeals of the Second Circuit in Thomas G. Carroll & Son Co. v. McIlvaine & Baldwin (C. C.) 171 Fed. 125; Thomas J. Carroll & Son Co. v. Same, 183 Fed. 22, 105 C. C. A. 314. To the same effect is Cahn v. Gottschalk, 2 N. Y. Supp. 13. See, also, Heublein v. Adams (C. C. Mass.), 125 Fed. 782. The case of Cahn v. Hoffman House, 7 Misc. Rep. 461, 28 N. Y. Supp. 388, relied upon by the Circuit Court of Appeals of the District of Columbia, is not persuasive in this case, because it does not here appear, as it did there (according to the opinion), that the word "Club," when applied to various kinds of liquor, has a special meaning indicating grade or quality.

[2, 3] In deciding the remaining questions in the case, the plaintiff's and defendant's respective trade-marks, because of their marked similarity, may well be considered as identical. It was found by the examiner, as well as the Commissioner, that the plaintiff and its predecessors have used the trade-mark, which is sought to be registered, on their products since the year 1874. In this respect their findings were evidently concurred in by the Court of Appeals of the District of Columbia. The record in this case also quite conclusively proves its adoption and use by plaintiff's predecessors in the year 1874 or 1875. In 1876 Reed, who originated it, registered one of the labels used by him in the Patent Office. Copies of newspapers published in Lexington, Ky., in 1876 and 1877, show advertisements of "Reed's Old Lexington Club Hand-Made Sour Mash" whisky. Admittedly the use by the defendant and its predecessors of the words "Lexington Club" does not antedate 1878. Undoubtedly, therefore, plaintiff's predeces-

sors were the first to adopt and to use the designation in question as a trade-mark for whisky.

Nor have I any doubt that the plaintiff has acquired title to the same. It was first adopted and used by J. H. Reed, who was in business by himself for a few months, and then with one Jackson, and later with one Warner. During all of this time it was used by these various firms. Subsequently Warner & Reed became financially embarrassed, and their business was taken over by one of their creditors, from whom the present plaintiff, in 1890, acquired, not only the distillery which formerly belonged to and was operated by Warner & Reed, but all of the latter's stock, trade-marks, etc. The name has been used by plaintiff continuously since that time, as it was likewise used during the time the business was operated by the creditors of Warner & Reed. It appears that in 1878 the words "Lexington Club" were adopted by Freiberg & Workum, who were engaged in the wholesale liquor business at Cincinnati, as a trade-name for certain whisky which was distilled by them at Petersburg, Ky. They operated that distillery and used the trade-mark on their products continuously until 1899, when both the distillery and the trade-mark were sold to the present defendant. Their sales of whisky so branded extended over a large territory and were of considerable volume. Originally Reed did not distill any of the whisky which he sold under the name of "Old Lexington Club," but purchased it. His sales were small and within a limited territory. The sales by Warner & Reed, while more extensive, were nothing like as great at any time as were those of Freiberg & Workum. At the most, they sold, outside of Lexington, Ky., only in New York, Chicago, St. Louis, and Cincinnati, while Freiberg & Workum's sales were made in practically every state in the Union.

Admittedly, the use by the latter of the words "Lexington Club" on whisky manufactured by them was known to the defendant as early as 1890, about the time the plaintiff corporation was formed. Reed knew of it some three or four years after he failed, which was in 1881, and although his knowledge may not be charged to the plaintiff or its predecessors, it is evidence of the fact that the use by Freiberg & Workum was generally known in the liquor trade, as the amount and extent of their sales would seem to clearly indicate that it must have been. Yet no steps were taken during all of the years intervening between then and 1905 to enjoin such use; nor was any remonstrance made against it. No excuse for the delay is advanced. In the last-mentioned year a suit was brought in the state courts of Ohio, but apparently was abandoned. During this time the defendant and its predecessors were building up a large business, greater and more extensive territorially than that of the plaintiff and its predecessors, and, necessarily, acquiring a reputation for the products which they manufactured and sold under the trade-name of "Lexington Club." The designation in question, therefore, has come to denote in the public mind the products of the defendant and its predecessors equally as well as, if not more so than, those of the plaintiff and its predecessors. In this sense it is equally the trade-mark of both.

It is urged by the defendant that under these circumstances the plaintiff should not be permitted to register its mark over the objection of the defendant. If the same principles are applicable to an action of this kind as would be applicable to a suit by the present plaintiff to enjoin the use by the defendant of the words "Lexington Club," I think that defendant's contention is sound. I cannot see that this phase of the case can be distinguished on principle from the decision of the Circuit Court of Appeals of this Circuit in Pflugh v. Eagle White Lead Co., 185 Fed. 769, 107 C. C. A. 659, nor from that of the Circuit Court of Appeals of the Second Circuit in Carroll & Son Co. v. McIlvaine, 183 Fed. 22, 105 C. C. A. 314. In the first of these cases it was said that the continued, persistent, and adverse use of the trade-mark by the defendant, to plaintiff's knowledge, during 14 years, showed an abandonment of an exclusive claim by the plaintiff; and on such abandonment new rights had, in the meanwhile, arisen on the part of the public. It was held that under such circumstances it would be inequitable to arrest, at that late date, the defendant's trade, which had, with the plaintiff's knowledge, been built up upon its trade-mark. In the latter case, although the plaintiff had established the prior use of the designation "Baltimore Club" as applied to whiskies, it was held that a delay of nearly 20 years, after knowledge of the use of the same designation by the defendant and its predecessors, to prevent such latter use, was laches, which would disentitle the plaintiff to an injunction against defendant's use, at least in the territory where the defendant had always used the trade-name and where the plaintiff had not competed with it. True, in each of these cases there were other circumstances mentioned in the opinions; but they in no way affected the decisions on the point in question. To the same effect is Valvoline Oil Co. v. Havoline Oil Co. (D. C. S. D. N. Y.) 211 Fed. 189, 194.

Although it was said by the Supreme Court in McLean v. Fleming, 96 U. S. 245, at page 253, 24 L. Ed. 828, that equity courts will not, in general, refuse an injunction on account of delay in seeking relief, where the proof of infringement is clear, and although this doctrine was expressly reaffirmed in Menendez v. Holt, 128 U. S. 514, 523, 524, 9 Sup. Ct. 143, 145 (32 L. Ed. 526), yet Mr. Chief Justice Fuller said, in the latter case:

"At the same time, as it is in the exercise of discretionary jurisdiction that the doctrine of reasonable diligence is applied, and those who seek equity must do it, a court might hesitate as to the measure of relief, where the use, by others, for a long period, under assumed permission of the owner, had largely enhanced the reputation of a particular brand. But there is nothing here in the nature of an estoppel—nothing which renders it inequitable to arrest at this stage any further invasion of complainants' rights."

These remarks were considered by the Circuit Court of Appeals in the Eagle White Lead suit as a recognition of the doctrine that one will be held to be estopped to assert an exclusive right to a trademark when it would be inequitable to permit him to do so.

In Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 37, 21 Sup. Ct. 7, 14 (45 L. Ed. 60), it was held that the failure of one for 20 years to seek to prevent others in this country, although such efforts had

been made abroad, from using a trade-name, was such laches as prevented relief, although there was no proof of actual knowledge of infringements in this country, Mr. Justice Brown remarking:

"By 20 years of inaction she was permitted the use of the word by numerous other importers, and it is now too late to resuscitate her original title."

French Republic v. Saratoga Vichy Co., 191 U. S. 427, 436, 24 Sup. Ct. 145, 48 L. Ed. 247, is to the same effect.

It would, in my judgment, be most inequitable to interfere with the defendant's trade under the circumstances of this case. The plaintiff has known of the defendant's use of its trade-name, and has taken no steps whatsoever to prevent it for at least 15 years, during all of which time defendant has been building up its business, which is far greater and more extensive than that of the plaintiff. For one to permit another to build up a reputation for one's goods under a trade-name for a long period of time, and then to assert an exclusive right to that name, and thereby acquire the benefit of the reputation and trade which the other has built up, when it lay in the power of the former at any time to have arrested the use of the trade-name by the latter, seems to me most inequitable, because, if the right had been asserted before the reputation was acquired, the infringer could have adopted another name and built his reputation on it. It would also tend to further deception upon the public, one of the results which injunctive relief in trade-mark cases seeks to prevent. Of course, if one knowingly and willfully adopts a name which has been used by another, a different situation might be presented. Such a case would exhibit actual fraud, and such, I think, is the distinguishing feature between cases such as this and Menendez v. Holt, supra. See Saxlehner v. Eisner & Mendelson, supra, 179 U. S. 39, 21 Sup. Ct. 7, 45 L. Ed. 60. But nothing of that kind appears in this case.

It remains, therefore, to consider whether such a defense is applicable to this kind of a suit. The statute provides that the registration of a trade-mark "shall be prima facie evidence of ownership." Section 16. Section 6 permits any one who believes he would be damaged by the registration of a trade-mark to oppose the same. This latter section has been construed to mean, and I think properly so, that the objector must show such interest in the proposed trade-mark that damage may be inferred. Battle Creek v. Fuller, 30 App. D. C. 411; Underwood v. Dick, 36 App. D. C. 175.

It is urged by the plaintiff that as it has shown a prior adoption and use of the mark, and as the registration thereof would be only prima facie evidence of ownership, the defendant could not be damaged by the registration, because it would have the same right to assert the defense, which it now urges, in any suit which might be brought for an infringement of the trade-mark so registered, as if it were not registered. There are, I think, several answers to this contention. In the first place I think that the principle under which relief is denied in the cases before mentioned is that the one asserting the exclusive right, although he had such a right at one time, no longer has it, either on the theory that the right has been lost, or that he is estopped from asserting it, or from denying that it has been aban-

doned. The latter was considered by the Circuit Court of Appeals of the Eighth Circuit in Layton Pure Food Co. v. Church & Dwight, 182 Fed. 35, 41, 104 C. C. A. 475, 32 L. R. A. (N. S.) 274, and apparently by the Circuit Court of Appeals of this Circuit in the Eagle White Lead suit, supra, to be the principle underlying such cases.

Under any of these theories the defendant would be damaged by the registration of the trade-mark, because it would confer upon the plaintiff a right to which it is not entitled, and which it could assert against the defendant, namely, a prima facie title. Further, it would seem to be ridiculous for a court to direct the registration of a trade-mark over the opposition of another, when, under the facts presented, it would not permit the owner of the trade-mark the exclusive right to use the same as against the other. In addition, I can readily see that damage would result to the defendant if the plaintiff were permitted to register this trade-mark, because in any suit hereafter brought against the defendant for infringement thereof the burden of disproving the plaintiff's title to the trade-mark as against the defendant would be cast upon the latter. Finally, the trade-mark in question, because of its similarity to that of the defendant and the circumstances before mentioned, is as much the defendant's trade-mark as it is the plaintiff's. This view, I think, is in harmony with that line of cases which hold that one may have a trade-mark in one section and another the same mark in a different section. Hanover Star Milling Co. v. Allen & Wheeler Co., 208 Fed. 513, 125 C. C. A. 515 (C. C. A. 7th Cir.); Carroll v. McIlvaine, supra; Levy v. Waitt, 61 Fed. 1008, 10 C. C. A. 227, 25 L. R. A. 190 (C. C. A. 1st Cir.)

It follows, therefore, that plaintiff is not entitled to have this trade-mark registered, and hence that the bill should be dismissed, with costs.