## KEEBLER WEYL BAKING CO. v. J. S. IVINS' SON, Inc.

### No. 7651.

District Court, E. D. Pennsylvania.
April 10, 1934.

Isador Pepp (of Ramsay & Pepp), Kenard N. Ware, Howson & Howson, J. Warren Brock, and Leon J. Obermayer (of Edmonds, Obermayer & Rebmann), all of Philadelphia, Pa., for plaintiff.

Benj. O. Frick (of Evans, Bayard & Frick), of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit in equity based upon alleged trade-mark infringement and unfair competition.

Both the plaintiff and the defendant are manufacturers of crackers, biscuits, cookies, and similar products, and both have their offices and plants in Philadelphia. Since a date prior to 1930, the plaintiff has been selling its products in Eastern Pennsylvania (including Harrisburg), New Jersey, Delaware, Maryland, and Florida and the de-

fendant has competed with it in that territory or at least in a considerable part of it.

In the latter part of 1930, the plaintiff developed a new type of soda cracker, deeply scored, so that it could be broken into halves of a convenient shape, and of slightly stronger texture than the ordinary kind, so that it could be spread with jam, cheese, and butter without breaking it. It is a good product, attractive, but not particularly unique or strikingly novel. For it the plaintiff adopted the name "Club Cracker."

The defendant's infringement of the trade-mark may be taken as conceded. It uses the name "Club Cracker," sells a product which is practically identical with the plaintiff's, and sells it in the same territory.

The plaintiff's trade-mark is not registered but the right arises from adoption and user as follows:

(a) Beginning December 11, 1930, the plaintiff sold the cracker in bulk in marked containers—at first in fourteen ounce tin cans or pails painted bright green with the words "Club Crackers" in white in large letters upon the can, and later in eight to ten-pound drums marked with a label upon which the words were printed. On January 30, 1932, the plaintiff began to sell it also in paste-board cartons having a distinctive design in two shades of green and yellow and prominently marked with the words "Club Crackers."

(b) The plaintiff advertised the cracker, featuring the name and a picture of the pail, from January 27 to February 13, 1931, in Philadelphia and Florida. From January 14, 1932, until the filing of the bill in June, 1933, and thereafter, the plaintiff advertised very extensively, featuring pictures of the new carton and the name, throughout its entire territory by newspaper advertisements, circulars, and billboards, spending in all more than $45,000 as follows: 1931—$2,000; 1932—$26,000; 1933—$17,000.

The plaintiff's cracker "caught on" rapidly and has had a very satisfactory sales record.

The defendant's case consists of an attack upon the plaintiff's right.

Three questions are involved:

I. Are the words "Club Crackers" susceptible of appropriation as a trademark?

• The defendant argues that they are not because they are descriptive and were never used by the plaintiff as a trade-mark, but solely as a grade mark to designate a particular kind or type of cracker.

I do not see how it can be seriously contended that the word "club" is descriptive. It tells you nothing about any special characteristic of the product. It is, no doubt, remotely suggestive of excellence (upon the theory that better food is served in clubs than elsewhere) and possibly of exclusive clientele, but of nothing more. The crackers are not any more adapted to use or by clubs than they are at home, in hotels, restaurants, or dining cars or at picnics. They are not manufactured by clubs or exclusively for clubs, nor are they, so far as I know, indorsed or specially featured by clubs. There are many words, at least equally suggestive of quality which have been sustained as valid trade-marks. The word "club," as a trade-mark for bottled cocktails, was sustained in Heublein v. Adams (C. C.) 125 F. 782, and, as a trade-mark for soda, by the British court of last resort in Cochrane v. MacNish & Son, App. Cas. 225 (1896). In Old Lexington Club Distillery Co. v. Kentucky Distilleries, etc., Co. (D. C.) 234 F. 464, the words "Old Lexington Club" as applied to whisky were held a valid trade-mark as against the objection that "Lexington" was geographical and "Club" descriptive of quality (there being no evidence of the latter fact). This case was affirmed by the Circuit Court of Appeals for the Third Circuit at 247 F. 1005. The court below cited Thomas G. Carroll & Son Co. v. McIlvaine & Baldwin, Inc. (C. C.) 171 F. 125; Id. (C. C. A.) 183 F. 22 ("Maryland Club" for whisky).

But the defendant has a somewhat more specific objection. It is that, whether or not the word is generic or descriptive generally, the plaintiff, in attaching it to a new type of cracker, used it in that sense. It is, of course, the law that a name, which is used solely to identify some particular type or grade of goods or to differentiate it from others of the same manufacturer, will not by such use become a trade-mark. Amoskeag Manufacturing Company v. Trainer, 101 U. S. 51, 25 L. Ed. 993. But it is equally well established that where the intention is to acquire a trade-mark, the mere fact that the name also serves to designate a particular kind, grade, or quality of article manufactured does not prevent the creation of a trade-mark right in it. Tillman & Bendel v. California Packing Corporation (C. C. A.) 63 F.(2d) 498, 504; Menendez v. Holt, 128 U. S. 514, 520, 521, 9 S. Ct. 143, 32 L. Ed. 526. The whole question depends upon the

user's intention—not a private, undisclosed intention, of course, but an intention evidenced by what he does.

In the instant case there was no use of the name by the plaintiff for its own convenience, prior to its taking steps to acquire it as a trade-mark, as there was in Norwine Coffee Company v. Chase & Sanborn (Cust. & Pat. App.) 58 F.(2d) 430, Autoline Oil Company v. Indian Refining Company (D. C.) 3 F.(2d) 457, and other cases holding that the mark was merely a grade mark. The plaintiff here had developed a new product. Naturally, the name served to distinguish it from its other products both for its own convenience and for its public sale; but the name was immediately advertised and advanced as a trade-mark with the indisputable intention of acquiring it as such. Whatever use it had as a grade mark was merely incidental.

II. Was the plaintiff the first appropriator of the word?

In dealing with this question it is necessary to have in mind the territory involved. Questions of priority of appropriation are predicated on territorial limits. Hanover Star Milling Company v. Metcalf, 240 U. S. 403, 36 S. Ct. 357, 60 L. Ed. 713; United Drug Company v. Theodore Rectanus Company, 248 U. S. 90, 39 S. Ct. 48, 63 L. Ed. 141; Tillman & Bendel v. California Packing Company, supra. And in Jacobs v. Iodent Chemical Company, 41 F.(2d) 637, the Circuit Court of Appeals for the Third Circuit held that these territorial limits were not necessarily state boundaries but were fixed by the actual field occupied.

In the plaintiff's territory, the defendant shows (a) that from 1909 to 1914 it sold crackers under the name "Country Club." Even if this constituted a prior use of the single word in issue, it was abandoned. (b) That from 1926 to 1929 it sold cookies under the name "Country Club." This use was also abandoned and in addition was applied to a different product. In view of the large number of registrations which will be referred to hereafter, I am satisfied that the trade-mark must have an extremely narrow scope [Pease v. Scott County Milling Company (D. C.) 5 F.(2d) 524, 525] and, of course, this works in favor of the plaintiff as against a prior user as well as against the plaintiff where subsequent infringement is involved. (c) That in February, 1931, it sold a cracker under the name "Club Flakes." This use was subsequent to the plaintiff's first use and I do not believe that it was in ignorance of the plaintiff's name and product.

In other fields the defendant has shown (a) a brief and unsuccessful use by the Century Biscuit Company of Indianapolis in a territory which nowhere impinged upon the plaintiff's. (b) A use by the Independent Baking Company of Davenport, Iowa, not applied to crackers like the plaintiff's and discontinued after a year. The testimony of the witness who was called for this purpose was so absurd that I would be inclined to reject it as unworthy of belief if it made any difference. (c) A use by the Kroger Grocery Company of the word "Country Club" in Pittsburgh but not in the plaintiff's territory. (d) Eight registrations of the word "club" (always in combination with some other word) applied to crackers and one hundred thirty-seven registrations of the word "club" (in most cases in combination) as applied to other food products. There was no evidence that any of these trade-marks have ever been used or are now being used in the plaintiff's territory or for that matter anywhere else. (e) The testimony as to the use by the Quality Biscuit Company and as to labels printed by the St. Louis Sticker Company is of doubtful competency being mostly hearsay, and in any event it does not go to the plaintiff's territory.

Having in mind territorial limitations above referred to as well as the principle stated in Heublein v. Adams, supra, to the effect that a transitory, spasmodic, and inconsiderable use is ineffective as a prior appropriation as against a long continued, notorious, and universally recognized use, I find that the plaintiff was the first appropriator of the mark.

III. Did the plaintiff lose its right by subsequent dealing with the word?

The plaintiff is now one of sixteen wholly owned subsidiaries of the United Biscuit Company of America, which is a holding company owning all of the stock of its subsidiaries and controlling their policies and, of course, their methods of sale and manufacture. With the plaintiff's consent some seven of the other subsidiary companies have been producing the same kind of cracker and selling it in similar cartons, marked with their respective names and manufactured by another subsidiary, a carton manufacturing company. Not only did the plaintiff consent to this use, but it sent one of its employees to

the other factory to show them how to manufacture the product.

Of course, a trade-mark is not a right in gross and cannot be assigned independently of the business. The validity of these assignments and the extent of the rights conveyed by them are not in issue here. The question is whether the assignments have destroyed the association in the public mind between the plaintiff's goods and the name, upon which the trade-mark right depends.

I do not think that they have. Keeping pace with industrial and business development the law has advanced a considerable distance from the earlier decisions which were made when small individual businesses personally owned and personally managed were the rule rather than the exception. Thus, in American Thermos Bottle Company v. W. T. Grant Company (D. C.) 279 F. 151, it was held that a trade-mark right was not impaired by the fact that the goods in connection with which it was used were in substantial part manufactured by others, the assembling and inspection being made by the plaintiff so that the marketed article was really the plaintiff's output. The use of a trade-mark does not any longer necessarily import that the articles on which it is used are manufactured by the user but it may be enough that they are manufactured for him, that he controls their production or even that they pass through his hands in the course of trade and that he gives to them the benefit of his reputation and name or business style. Nelson v. J. H. Winchell & Co., 203 Mass. 75, 89 N. E. 180, 23 L. R. A. (N. S.) 1150. An article need not be actually manufactured by the owner of the trade-mark it being enough that it is manufactured under his supervision and according to his directions thus securing both the right of the owner and the right of the public. Cocoa-Cola Company v. State (Tex. Civ. App.) 225 S. W. 791.

I can see no imposition upon the public, no abandonment, and no other element which impairs a trade-mark right when the corporation which owns it, which in turn is owned by a general control, permits other corporations under the same general control to use the mark upon an identical product which they produce in accordance with the owner's directions and instructions.

█ The bill being based on a technical trade-mark and the holding being that it is valid and infringed, the more general issue of unfair competition need not be considered.

The statements of fact and law contained in this opinion may be taken as specific findings and conclusions.

Decree for the plaintiff.