BORDEN ICE CREAM CO. et al. v. BORDEN'S CONDENSED MILK CO.

(Circuit Court of Appeals, Seventh Circuit. November 14, 1912.)

No. 1,904.

1. TRADE-MARKS AND TRADE-NAMES (§ 10*)—NAMES SUBJECT OF OWNERSHIP—NAMES OF PERSONS.

A personal name is not subject to exclusive appropriation as a trade-mark, even though registered as such.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 14; Dec. Dig. § 10.*

Right to use one's own name as trade-mark or trade-name, see notes to 17 C. C. A. 579; 27 C. C. A. 357.]

2. TRADE-MARKS AND TRADE-NAMES (§ 78*)—UNFAIR COMPETITION—RIGHT TO EQUITABLE RELIEF.

Relief against unfair competition is granted by a court of equity only on the ground that complainant's business is injured thereby.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 88; Dec. Dig. § 78.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 78*)—UNFAIR COMPETITION—USE OF PERSONAL NAMES.

Complainant, Borden's Condensed Milk Company, held not entitled to an injunction to restrain the use by defendant of the name "Borden" in its corporate name of "Borden Ice Cream Company," where complainant had never made or sold commercial ice cream, which was the business for

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which defendant was incorporated, so that the two companies have never come into competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 88; Dec. Dig. § 78.*

Unfair competition in use of trade-mark or trade-name, see notes to 20 C. C. A. 165; 30 C. C. A. 376.]

**4. TRADE-MARKS AND TRADE-NAMES (§ 68*)—"UNFAIR COMPETITION."**

The fundamental test of "unfair competition" is not whether the public is likely to be deceived as to who is the maker or seller of goods, but is whether or not the defendant is, in effect, by his conduct, passing off his goods as complainant's goods, or his business as complainant's business.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 79; Dec. Dig. § 68.*

For other definitions, see Words and Phrases, vol. 8, p. 7174.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois; Christian C. Kohlsaat, Judge.

Suit in equity by Borden's Condensed Milk Company against the Borden Ice Cream Company, Charles F. Borden, George W. Brown, Edgar V. Stanley, William H. Powers, and Harry Lawler. From an order granting a preliminary injunction (194 Fed. 554), defendants appeal. Reversed.

This is an appeal from an interlocutory order of injunction entered in the District Court, restraining the appellants "from the use of the name 'Borden' in the manufacture or sale of ice cream and like articles, and the manufacture or sale of milk products in any of their forms, without plainly and in written or printed form attached to all cartons of such commodities, and upon all wagons or other vehicles used in the delivery of such commodities, and on all letter heads and other stationery going out to customers and to the public, and in all places where the name 'Borden's Ice Cream Company' may hereafter appear in the transaction of any business by the defendants, advising purchasers and the public in an unmistakable manner that the product of the defendants is not that of the complainant, 'Borden's Condensed Milk Company.'"

The word "Borden" in the corporate name of the appellee was taken from the name of Gail Borden, who founded the business in the year 1857, and since that time it has been and is now a trade-name of great value, identified almost universally with the business of milk and milk products of the appellee and its predecessors. The trade-name "Borden," or the word "Borden," constitutes one of the principal assets of the appellee, and is widely known and identified with the good will and public favor enjoyed by it throughout the United States.

On May 31, 1899, the appellee was incorporated under the laws of the state of New Jersey, with broad corporate powers, and specifically authorized "to manufacture, sell and otherwise deal in condensed, preserved and evaporated milk and all other manufactured forms of milk; to produce, purchase and sell fresh milk, and all products of milk; to manufacture, purchase and sell all food products; to raise, purchase and sell all garden, farm and dairy products; to raise, purchase and sell, and otherwise deal in, cattle and all other live stock; to manufacture, lease, purchase and sell all machinery, tools, implements, apparatus and all other articles and appliances used in connection with all or any of the purposes aforesaid, or with selling and transporting the manufactured or other products of the company; and to do any and all things connected with or incidental to the carrying on of such business, or any branch or part thereof."

It may be stated in this connection that the charter of the company con-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tains no express authority to manufacture or sell what is known commercially as ice cream.

The record shows that the appellee uses in the disposition of its products some thirty-two brands, each one of which either contains the name "Borden," or is used in connection with the name "Borden's Condensed .Milk Company." Of these brands sixteen specifically refer to condensed or evaporated milk, seven to candy, two to malted milk, one to coffee, one to butter, one to buttermilk, one to fluid milk, two to cream, and one to malted milk ice cream; and that trade-marks have been registered on most of the brands.

Appellee has developed in the state of Illinois and the city of Chicago, and elsewhere, a large business in the sale of fresh milk and cream and evaporated milk to confectioners for use by them in making commercial ice cream. It has expended large sums of money in promoting and advertising its business, and particularly, in extending the sale of the so-called "Borden's Peerless Brand Evaporated Milk, Confectioners' Size," a high quality of evaporated milk inclosed in cans, especially designed for use in the manufacture of ice cream.

For more than two years prior to the filing of the bill in the District Court, the appellee had been manufacturing a form of ice cream known as "Borden's Malted Milk Ice Cream," which product is, as the name implies, an ice cream made with malted milk as its basic element, and is especially adapted for use in hospitals. This malted milk ice cream, which hitherto has been used only in hospitals, the appellee is about to place on the market for general use in competition with commercial ice cream.

On May 25, 1911, the appellants Charles F. Borden, George W. Brown, and Edgar V. Stanley applied to the Secretary of State of the state of Illinois for a license to incorporate under the name of "Borden Ice Cream Company." On July 31, 1911, the appellee notified the individual appellants that the term "Borden" had become so firmly established in connection with the products of the appellee the use of that word in connection with any company dealing in milk products would lead to the presumption that they were the products of the appellee, and demanded that the word "Borden" be eliminated from appellants' company name.

On the same day appellee protested to the Secretary of State of the state of Illinois against the issuance of any charter under the name of "Borden Ice Cream Company," but on the 16th of August, 1911, a charter was duly issued to the "Borden Ice Cream Company," by which it was authorized "to manufacture and sell ice cream, ices and similar products."

The appellant Charles F. Borden had never before been engaged in the ice cream business, or in buying or selling milk or milk products, or in any similar business, and is not the principal person connected with the appellant Borden Ice Cream Company. The appellant Lawler is an ice cream manufacturer, and has subscribed to 47 out of a total of 50 shares of stock of the Borden Ice Cream Company. Charles F. Borden has subscribed to one share of stock, and has not paid for that.

The bill charges, upon information and belief, that it is the intention of appellant Borden Ice Cream Company to use the word "Borden" for the purpose of trading upon the reputation of appellee's goods and products, and for the purpose of deceiving and defrauding the public into the belief that such product is the product of the appellee; that such "improper, deceitful and fraudulent use of the name 'Borden' will be a great and irreparable injury to the complainant's [appellee's] property right in its trade-name; and that the reputation of the products of complainant [appellee]' will be greatly injured thereby; and that the business of complainant [appellee] will be injured;" and that there will be great confusion in the business carried on by the original company because of such improper use; and that it will be impossible for present and prospective customers to know that the product of the Borden Ice Cream Company is not the product of Borden's Condensed Milk Company.

The bill and the affidavits on file do not show any facts tending to sustain the allegation of irreparable injury to the old company or its business, or showing or tending to show that the old company has been or will be injured

in any way in the business which it is now engaged in. Moreover, it does not appear that the malted milk ice cream manufactured by the old company will in any way come into competition with the commercial ice cream proposed to be put on the market by the new company.

The bill was filed before the defendant had started to do any business. The answer admits most of the material allegations, but denies all fraudulent purpose.

George W. Brown and Wharton Plummer, both of Chicago, Ill., for appellant.

Pringle & Fearing, of Chicago, Ill., for appellee.

Before BAKER and SEAMAN, Circuit Judges, and CARPENTER, District Judge.

CARPENTER, District Judge (after stating the facts as above). [1] A personal name, such as "Borden," is not susceptible of exclusive appropriation, and even its registration in the Patent Office cannot make it a valid trade-mark. Howe Scale Co. v. Wyckoff, 198 U. S. 134, 25 Sup. Ct. 609, 49 L. Ed. 972; Elgin Natl. Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Singer Mfg. Co. v. June Mfg. Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118; Brown Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. 625, 35 L. Ed. 247.

There is no charge made in the bill that the appellants are infringing, or propose to infringe, upon any technical trade-mark of the appellee, so we may dismiss any claim for relief upon that score.

[2] The only theory upon which the injunction in this case can be sustained is upon that known as unfair competition. Relief against unfair competition is granted solely upon the ground that one who has built up a good will and reputation for his goods or business is entitled to all of the resultant benefits. Good will or business popularity is property, and, like other property, will be protected against fraudulent invasion.

The question to be determined in every case of unfair competition is whether or not, as a matter of fact, the name used by the defendant had come previously to indicate and designate the complainant's goods. Or, to put it in another way, whether the defendant, as a matter of fact, is, by his conduct, passing off his goods as the complainant's goods, or his business as the complainant's business.

[4] It has been said that the universal test question in cases of this class is whether the public is likely to be deceived as to the maker or seller of the goods. This, in our opinion, is not the fundamental question. The deception of the public naturally tends to injure the proprietor of a business by diverting his customers and depriving him of sales which otherwise he might have made. This, rather than the protection of the public against imposition, is the sound and true basis for the private remedy. That the public is deceived may be evidence of the fact that the original proprietor's rights are being invaded. If, however, the rights of the original proprietor are in no wise interfered with, the deception of the public is no concern of a court of chancery. American Washboard Co. v. Saginaw Mfg. Co., 103 Fed. 281, 43 C. C. A. 233, 50 L. R. A. 609.

Doubtless it is morally wrong for a person to proclaim, or even intimate, that his goods are manufactured by some other and well-known concern; but this does not give rise to a private right of action, unless the property rights of that concern are interfered with. The use by the new company of the name "Borden" may have been with fraudulent intent; and, even assuming that it was, the trial court had no right to interfere, unless the property rights of the old company were jeopardized. Nothing else being shown, a court of equity cannot punish an unorthodox or immoral, or even dishonest, trader; it cannot enforce as such the police power of the state.

In the case now under our consideration the old company (the appellee) never has manufactured what is known as commercial ice cream. The new company (the appellant) was incorporated for the sole purpose of manufacturing and putting on the market such an article.

Nonexclusive trade-names are public property in their primary sense, but they may in their secondary sense come to be understood as indicating the goods or business of a particular trader. Such trade-names are acquired by adoption and user, and belong to the one who first used them and gave them value in a specific line of business. It is true that the name of a person may become so associated with his goods or business that another person of the same or a similar name engaging in the same business will not be allowed to use even his own name, without affirmatively distinguishing his goods or business.

The secondary meaning of a name, however, has no legal significance, unless the two persons make or deal in the same kind of goods. Clearly the appellants here could make gloves, or plows, or cutlery, under the name "Borden" without infringing upon any property right of the old company. If that is true, they can make anything under the name "Borden" which the appellee has not already made and offered to the public. George v. Smith (C. C.) 52 Fed. 830.

[3] The name "Borden," until appellants came into the field, never had been associated with commercial ice cream. By making commercial ice cream the appellants do not come into competition with the appellee. In the absence of competition, the old company cannot assert the rights accruing from what has been designated as the secondary meaning of the word "Borden." The phrase "unfair competition" presupposes competition of some sort. In the absence of competition the doctrine cannot be invoked.

There being no competition between the appellants and appellee, we are confronted with the proposition that the appellee, in order to succeed on this appeal, has and can enforce a proprietary right to the name "Borden" in any kind of business, to the exclusion of all the world.

It is urged that appellee has power, under its charter, to make commercial ice cream, and that it intends some day to do so. If such intention can be protected at this time, it might well be that appellee, having enjoined appellants from making commercial ice cream, would rest content with selling its evaporated milk to ice cream dealers, and

never itself manufacture the finished product. But, as was well stated by Judge Coxe, in George v. Smith, supra:

"It is the party who uses it first as a brand for his goods, and builds up a business under it, who is entitled to protection, and not the one who first thought of using it on similar goods, but did not use it. The law deals with acts and not intentions."

Appellee also urges that it makes and sells large quantities of evaporated or condensed milk to manufacturers of ice cream, and that if the appellants are permitted to use the name "Borden" in the ice cream business dealers probably will believe that its ice cream is made by appellee, and will in consequence buy the finished product rather than the component parts, and that appellee's sales of evaporated or condensed milk will fall off, to its manifest damage. Such result would be too speculative and remote to form the basis of an order restraining men from using in their business any personal name, especially their own.

Appellee is in this position: If it bases its right to an injunction upon the doctrine of unfair competition, no competition of any kind has been shown by the record. If it relies upon some supposed damage which may result from appellants' use of the name "Borden" in connection with inferior goods, the action is premature, because the appellants, as yet, have neither sold nor made anything.

The order of the District Court must be reversed; and it is so ordered.