5 F.2d 524 (1925)
PEASE et al.
v.
SCOTT COUNTY MILLING CO.
No. 6473.
District Court, E. D. Missouri, E. D.
March 24, 1925.
Edgar T. Brandenburg, of Washington, D. C., J. F. Brandenburg, of New York City, and John H. Bruninga, of St. Louis, Mo., for plaintiffs.
Andrew B. Remick, of St. Louis, Mo., for defendant.
FARIS, District Judge.
This case was submitted some time ago, but was overlooked by the court. It came by transfer, pursuant to stipulation, from the Southeastern division, being originally numbered 220, and now numbered 6473, in equity, on the docket of this court.
This is a suit in equity, as forecast by the number, for an injunction and an accounting, bottomed upon an alleged infringement by defendant of the registered trade-mark of plaintiffs, which trade-mark carries the word "Nox-All," as applied to a mixed or commercial stock food made by plaintiffs, which said trade-mark was duly registered by plaintiffs on the 30th day of October, 1922. In the beginning, I should have stated that the case was submitted to the court on an agreed statement of facts; no evidence was taken in it.
The answer of the defendant is an admission of the fact of the issuance of the certificate of registry of the trade-mark to plaintiffs, that plaintiffs are engaged in making and selling stock foods, that defendant is likewise engaged in selling a stock food under the name of "Noxall," and that plaintiffs heretofore complained of the action of defendant in the behalf last mentioned. Other facts are denied in substantial effect; that is to say, defendant avers that it has no knowledge or information of the existence of the facts pleaded, and asks that strict proof thereof be made and required of plaintiffs. Defendant also sets up a counterclaim, for that, as it is alleged, in the year 1893 its predecessor began using the word "Noxall" as a trade-mark on wheat flour made by its predecessor; that on February 20, 1916, defendant registered this trade-mark, as by law permitted, in the Patent *525 Office; and that both before and after such registration defendant and its predecessor constantly and continuously used such trade-mark on wheat flour made and sold by it and by its said predecessor.
The agreed statement of facts on which the case is submitted to the court, eliminating merely conceded jurisdictional matters, substantially is that, since 1903, plaintiffs and their predecessor have been making and selling a mixed stock food, composed of corn, oats, alfalfa meal, and molasses, which they marketed under the trade name of "Nox-All"; that in the year 1915, plaintiffs' predecessor began selling such stock food, so marked, in interstate commerce; that on October 30, 1922, plaintiffs registered this name as a trade-mark for such mixed stock food in the Patent Office, pursuant to law, and got a certificate thereof, hearing the above date and numbered 146,329; that plaintiffs have extensively advertised such stock food at substantial expense, and during the years 1921, 1922, and the first half of the year 1923 they have sold more than 18,000,000 pounds of such stock food so marked, in many Southern states; and that plaintiffs were not advised, and had no knowledge of the use by defendant of the word "Noxall" on flour, or on any other product, until about the month of March, 1921; that defendant's predecessor, about the year 1893, began to use the word "Noxall" as a trade-mark for wheat flour made and sold by it, and continuously since that date such predecessor used this trade-mark, until 1904, when it sold out to defendant, and thereafter continuously defendant has used this mark on such flour made and sold by it; that in 1916 defendant procured the registration of this word "Noxall" as a trade-mark for wheat flour; that up to five years ago defendant was not engaged in making and selling food for live stock, but that in 1919 it began selling a live stock food made for it by others, according to a formula and mixture similar in all ways to that of plaintiffs, that is to say, a stock food composed of corn, oats, alfalfa meal, and molasses; that in the year 1921 it built a feed mill and began making and continued selling such stock food, marking it, for the whole five-year term, with the word "Noxall" as a trade-mark; that it began shipping such feed in interstate commerce in 1919, and is now shipping and selling the same in many of the states wherein plaintiffs' product is sold. It is also agreed that the words "Noxall," "Nox-All," and "Noxal" have been registered as trade-marks some 30 times, for almost every conceivable product, including poultry cures, paints, clothing, mineral water, starch, beer, meat, wheat flour, and stock food; that, in addition, this word is used as a trade-name by some 15 or 20 concerns, to designate divers articles or manufacture and sale, from cultivators to washing machines.
Upon these facts both sides contend for judgment. In limine, it is plain that, since the plaintiffs have been using the word about which the dispute wages for 22 years as a trade-mark for a mixed stock food, and defendant has been using it for 32 years as a trade-name for wheat flour, and both parties have had it registered as a statutory trade-mark (defendant in 1916, for wheat flour, and plaintiffs in 1922, for a mixed stock food), there is no such situation presented as indicates fraud, malice, or intentional infringement, without a fair claim of right.
The ruled cases disclose two lines of decision: A narrow rule of protection in a case wherein the trade-mark in dispute has been, as here, registered under the statute for some 30 times as a trade-mark, for as many different products, and has also been used as a common-law trade-mark as to some 20 other products (Columbia Mills Co. v. Alcorn, 150 U. S. 460, 14 S. Ct. 151, 37 L. Ed. 1144; Pabst Brewing Co. v. Decatur Brewing Co. [C. C. A.] 284 F. 110; Church, etc., Co. v. Russ [C. C.] 99 F. 276; Borden, etc., Co. v. Borden, etc., Milk Co., 201 F. 510, 121 C. C. A. 200; Lawrence v. Sharpless Co. [D. C.] 203 F. 762; Denver, etc., Co. v. Alexander, etc., Co., 50 App. D. C. 207, 269 F. 859; George v. Smith [C. C.] 52 F. 830; Beich Co. v. Kellogg, etc., Co., 49 App. D. C. 186, 262 F. 640; Nulyne Laboratories v. Electro-Alkaline Co., 52 App. D. C. 265, 285 F. 999), and a broad line of protection, where the common-law trade-mark or trade-name, or statutory trade-mark, is original or distinctive (Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039; Peninsular Chemical Co. v. Levinson Co., 247 F. 658, 159 C. C. A. 560; Florence Manufacturing Co. v. Dowd, 178 F. 73, 101 C. C. A. 565; Enoch Morgan's Sons v. Wood, 152 F. 690, 81 C. C. A. 616, 12 L. R. A. [N. S.] 729; Anheuser-Busch v. Budweiser, etc., Corporation [D. C.] 287 F. 243; Vogue Co. v. Thompson-Hudson Co. [C. C. A.] 300 F. 509).
This distinction is made clear by what was said in the case of Pabst Brewing Co. v. Decatur Brewing Company, supra, wherein the words in dispute were the words "Blue Ribbon," as applied by plaintiff therein to beer, *526 and by defendant therein to malt extract. The court said:
"It [`Blue Ribbon'] was shown to have been registered in the Patent Office over 60 times. * * * Such registrations at different times and to different persons would indicate that the Patent Office did not recognize a large measure of inclusiveness in the name. * * * In view of the very wide and general employment of `Blue Ribbon' as a trade-name, we believe the District Court properly concluded that appellant's right to use it was limited to its registered product, and whatever other first use it made of it, and that in appellee's use of it there was no likelihood of any confusion of its product with that of appellant."
Again, in the case of Lawrence v. Sharpless Co., supra, the controversy arose over the use of the picture of a cow as a trade-mark for plaintiff's butter. Defendant therein was sued, for that it has used such a picture on its brand of cheese. What the court said bears on both points involved in the instant case, as witness this excerpt:
"The use of the figure of the cow upon the defendant's prints of butter prior to its use by complainants for cheese would not, in my opinion, invalidate the complainants' trade-mark. * * * While butter and cheese are both dairy products, they are in such distinctly different classes that neither can be said in any sense to enter into competition with the other. Similar trademarks put upon cheese as a product of one party could by no possibility deceive the purchaser intending to buy the butter of the other party, and vice versa. The defendant does not claim to have used its trade-mark of the side figure of a cow upon packages of cheese until after it had been nearly thirty years in constant use on cheese by the complainants, and there is no proof that it was used by the defendant on cheese in such a manner as to give it any right thereto prior to the registration of the complainants' trade-mark in 1906. * * * The fact that the defendant was a maker and dealer in dairy products in general would not entitle it to appropriation of its trade-mark for butter to the whole field of dairy products, nor give it the right, as against its prior use upon cheese, to adopt it as a trade-mark for cheese."
It is fairly clear that the Patent Office did not consider that wheat flour and a mixed stock food, made of corn, oats, alfalfa meal, and molasses, were in the same trade-mark category; otherwise, that office would not have registered the word "Nox-All" as a trade-mark of plaintiffs for a stock food in 1922, when it had theretofore in 1916 registered this identical word (barring the hyphen) as a trade-mark for defendant's wheat flour. Even before this it had registered this identical word as a statutory trade-mark, for chicken cholera medicine, beer, starch, corn cure, meat, and mineral water, not to mention 19 other registrations of the word as a trade-mark for other manufactured products and articles, running in the alphabetical category from clothing to tents.
A distinctive name, such as "Kodak," "Budweiser," "Ford," "Aunt Jemima," "Penslar," and "Delmonte," will be broadly protected in all cases where damage will be inflicted by unauthorized use; while words like "Blue Ribbon," "Star," and "Noxall," and other words of like character, will be protected only within the range of use upon similar goods.
Here defendant and its predecessor used this word as a common-law mark on wheat flour for some 20 years or more, and as a statutory trade-mark on similar flour for some 6 years, before this action was begun. Plaintiffs and their predecessor have used this word for more than 20 years as a common-law trade-mark, and for some 2 years as a registered statutory trade-mark for a mixed stock food, made from corn, oats, alfalfa meal, and molasses. Plaintiffs or their predecessor had been using the word on stock food some 15 years before defendant went into the business of making or selling a stock food, similar in all respects, to that of plaintiffs.
In the light of the ruled cases, and in common sense, there is such difference existing in composition, manufacture, and use of the two products in question here as to make it fairly plain that neither one necessarily invades the field of the other. I see no reason why the statutory trade-mark of plaintiffs should not be upheld as to the stock food in question, or why, so far as this case is concerned, the trade-mark of defendant should not stand as a trade-mark to designate the wheat flour made by defendant. The finding, therefore, will be for plaintiffs, that their statutory trade-mark is infringed by defendant, as also for plaintiffs and against defendant on defendant's counterclaim, and this counterclaim will be dismissed.
Plaintiffs may have a decree for an injunction as prayed, and for an accounting as to damages and profits, since the filing of their bill of complaint herein, on the 13th day of December, 1922, and to this end a *527 master will be appointed, if requested. The court thus limits the right of the potential recovery of damages and profits, because the facts and situation do not disclose any actionable recalcitrancy, or any malicious or intentional infringement. The circumstances, as already forecast, indicate that the parties honestly believed that they had the right to use the trade-mark in question.
A decree may be submitted accordingly.