### BEECH–NUT PACKING CO. v. P. LORILLARD CO.

(Circuit Court of Appeals, Third Circuit. September 11, 1925.)

No. 3282.

1. **Trade-marks and trade-names and unfair competition ⚖⇒61—"Trade-mark" for foods not infringed by use for tobacco; "same descriptive property."**

Trade-mark of dealer in food products is not infringed by its use by manufacturer of tobacco, a narcotic; Trade-Marks Act Feb. 20, 1905, § 5 (Comp. St. § 9490), implying that trade-mark identical with one registered and owned and used by another may be registered, if not appropriated to merchandise of the "same descriptive property," that is, of the same class, and a "trade-mark" being merely a protection of good will, and not the subject of property, except in connection with an existing business of the class to which it is appropriated.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Trade-Mark.]

2. **Trade-marks and trade-names and unfair competition ⚖⇒73(1)—No unfair competition in use of label with same trade-mark.**

Practically the only similarity between the label of plaintiff, dealer in food products, and that of defendant, tobacco manufacturer, being the trade-mark "Beech-Nut," to honest use of which each was entitled, and defendant's label bearing its name, *held*, there was no unfair competition in any sense.

Appeal from the District Court of the United States for the District of New Jersey; Charles F. Lynch, Judge.

Suit by the Beech-Nut Packing Company against P. Lorillard Company. Bill dismissed (299 F. 834), and plaintiff appeals. Affirmed.

Walter A. Scott, James R. Offield, and H. McClure Johnson, all of Chicago, Ill., and Edward C. Lukens, of Philadelphia, Pa., for appellant.

Treacy & Milton, of Jersey City, N. J. (John Milton, of Jersey City, N. J., Livingston Gifford and William R. Perkins, both

of New York City, and Thos. L. Preston, of Richmond, Va., of counsel), for appellee.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. The Beech-Nut Packing Company brought suit in the District Court against the P. Lorillard Company for alleged infringement of its trade-mark, "Beech-Nut," and for unfair competition, and prayed for profits and damages. Defendant admits the use of the trade-mark on a brand of its scrap tobacco and on a brand of cigarettes, but insists that it has the right so to use the trade-mark, and that such use does not constitute infringement of the trade-mark or unfair competition. This is an appeal from the decree of the District Court dismissing the plaintiff's bill, on the ground that the defendant had not infringed the trade-mark.

The word "Beech-Nut," as a trade-mark for food products, was originated by plaintiff's predecessor, the Imperial Packing Company, in or about 1891. In 1899 the Beech-Nut Packing Company, the plaintiff, was incorporated and acquired the assests, including the trade-mark, of the Imperial Packing Company. At first the word was used on ham and bacon only, but its use was gradually extended to other products, such as peanut butter, baked beans, chili sauce, catsup, jellies, mints, chewing gum, etc., until to-day it is used on most all leading food products. From a very small beginning in 1891 the business grew until in 1921 its total sales amounted to more than $12,000,000.

The trade-mark is used in connection with a label, which is oval-shaped, with a red and white border. Within the upper part of the oval, and correspondingly curved, is the word "Beech-Nut," generally in large, blue letters. Below this, in the center of the oval, is the picture of a beechnut. There is also the picture of a beechnut in the red border on each side of the oval. Within this border, at the top, in large white letters, are the words "Beech-Nut Brand," and at the bottom is the word "Bacon," or the name of the particular product contained in the package to which the label is attached.

The defendant and its predecessors have been in the tobacco business since 1780. In 1897 the Harry Weissinger Tobacco Company, of Louisville, Ky., originated a brand of scrap tobacco called "Beechnut Chewing and Smoking Tobacco," and registered the word "Beechnut" as its trade-mark. This brand of tobacco was sold under this trade-mark by that company and its successors until in the year 1910. The Weissinger Company, however, in 1903 sold and transferred its entire assets, including its business, good will, and the "Beechnut" trade-mark, to the Continental Tobacco Company, a corporation of New Jersey. The Continental Tobacco Company in that year sold and transferred the trade-mark and other assets to the Luhrman & Wilbern Tobacco Company, of Middletown, Ohio, for its issued share capital. The next year the Continental Tobacco Compay was merged with the American Tobacco Company.

The government began a suit in equity in 1907 under the Anti-Trust Act of July 2, 1890 (Comp. St. §§ 8820–8823, 8827–8830), against the American Tobacco Company and its affiliated companies as an unlawful combination in restraint of interstate commerce in tobacco. It prevailed, and in accordance with the directions of the decree dissolving the American Tobacco Company in 1911 the defendant company was organized, and to it was transferred in that year the capital stock of the Luhrman & Wilbern Company and the trade-marks and brands belonging to it, including the "Beechnut" trade-mark. From the small beginning of Pierre Lorillard in 1760, the business constantly grew until in 1919 the retail value of the defendant's output was over $80,000,000.

The demand for particular brands of tobacco seems to rise and fall in accordance with the changing tastes of consumers. The defendant company, after personal investigation, discovered in 1914 that the sweeter brands were the more popular, and that sales of brands not so sweet were decreasing. Consequently it decided that it would "get up" a new and sweeter brand, which would suit the changed taste of consumers at that time. After experimenting quite a while, it worked out what seemed to it to be the "ideal product to put out."

It was then confronted with the problem of selecting a suitable name and label for the new brand. It examined the list of brands it received from the American Tobacco Company. It had before selected names for brands from that list, such as "Comet," "Pioneer," and "Yacht Club." On the Luhrman & Wilbern list there were the names of "Bagpipe," "Beechnut," "Honest Scrap," "Natural Leaf," "Old Nut," "Polar Bear," and "Scrap Iron." All of these were actively selling, except "Beechnut," and this was a dormant brand, not having been sold since 1910. "Beechnut" was thereupon se-

lected and used on this new brand of "scrap" tobacco. The word had been written without a hyphen between "Beech" and "Nut," but the defendant added one and wrote it "Beech-Nut." This change made the trade-mark identical with the plaintiff's.

For a label it selected an oval, with a small, deep blue border, from which extended on all sides red bars, or stripes, called a sunburst. At the top of the label, written in blue letters, is the word "Lorillard's." Within the oval at the top is the trade-mark "Beech-Nut," in large blue letters. In the middle of the oval is the picture of two beechnuts inverted, and below them the word "Chewing," and at the bottom the word "Tobacco." Weissinger's label was rectangular. Near the center was the picture of a squirrel eating a nut. At the top, printed in large white letters, was the word "Beechnut," and below the squirrel the words "Chewing and Smoking Tobacco." The oval shape of the label, which the defendant adopted, "had been used on many brands of tobacco in order to give more space for the name." If a circle had been used, the defendant would have been compelled "to pinch the name of the brand down to a point where it would make it less conspicuous." The twin beechnuts, represented in the center of the oval, were actually copied from beechnuts picked up on the New Jersey farm of the president of the defendant company.

The "Beech-Nut" brand of tobacco came out early in 1915 and met with great success. The sales of this single brand, a 10-cent package, have exceeded year by year since 1916 the sales of all the combined products of the plaintiff. In 1919 the sales of the plaintiff's entire output amounted to $8,979,-586.35, while the sales of the "Beech-Nut" scrap chewing tobacco amounted to $14,650,-865.63. It appears that some people thought that the plaintiff was putting out the "Beech-Nut" scrap tobacco and cigarettes and wrote inquiring about it. These inquiries for a time were sent by the plaintiff to the defendant. Correspondence arose between them regarding their rights in the use of the word "Beech-Nut" as a trade-mark for their commodities. Their respective contentions resulted in this litigation.

[1] The Act of February 20, 1905 (33 Stat. 724), authorizing the registration of trade-marks, provides that the owner of a trade-mark may obtain registration of it by filing in the Patent Office an application therefor, addressed to the Commissioner of Patents, specifying, among other things, "the class of merchandise and the particular description of goods comprised in such class to which the trade-mark is appropriated." Section 1 (Comp. St. § 9485). It further provides "that trade-marks which are identical with a registered or known trade-mark owned and in use by another and appropriated to merchandise of the same descriptive properties * * * shall not be registered." Section 5 (Comp. St. § 9490). Merchandise of the same descriptive properties is merchandise of the same class. The implication in the statute is that a trade-mark, which is identical with a registered trade-mark owned and in use by another, may be registered if it is *not* appropriated to merchandise of the same class. Therefore the owner of a trade-mark does not have the exclusive right to the use of a name as a trade-mark, except in the class of merchandise to which it is appropriated in an existing business. A trade-mark is merely a protection of good will, and not the subject of property, except in connection with an existing business. Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 413, 414, 36 S. Ct. 357, 60 L. Ed. 713.

Judge Woolley in his comprehensive exposition of the law of trade-marks, said with reference to the property right of an owner in the mark: "If property it is property of a qualified nature, for it is settled that no absolute ownership in or exclusive right to use a name as a trade-mark is vested in any one." Rosenberg Bros. & Co. v. John F. Elliott, 7 F.(2d) 962. In other words, what gives the owner a property right in a trade-mark is its connection with an existing business of the *class* to which it is appropriated. "The general rule of law on this subject is that the owner must have used his trade-mark on the same *class*, but not necessarily on the same species of goods as the alleged infringer in order to entitle him to its protection against infringement." Layton Pure Food Co. v. Church & Dwight Co., 182 F. 35, 37, 104 C. C. A. 475, 477, 32 L. R. A. (N. S.) 274.

In the case of Atlas Manufacturing Co. v. Street & Smith, 204 F. 398, 122 C. C. A. 568, 47 L. R. A. (N. S.) 1002, the complainant registered the words "Nick Carter" as his trade-mark, and in compliance with the requirement of the statute described the goods to which it was appropriated as "a weekly periodical devoted to fiction." The court held that he might not restrain the use of the term "Nick Carter" as the name of a personage shown in moving pictures, be-

cause weekly periodicals and moving pictures do not belong to the same *class* of business. The owner of a trade-mark has the right to its exclusive use, not only on the goods which he has produced, but also on the goods of different species which he may desire in the future to produce, if they belong to the same class. William Waltke & Co. v. George H. Schafer & Co. 263 F. 650, 49 App. D. C. 254. The reason why the same mark may be used by different persons when appropriated to different classes of goods is because the goods, being of different classes, do not come into competition with each other. Borden Ice Cream Co. v. Borden's Condensed Milk Co., 201 F. 510, 121 C. C. A. 200; Atlas Manufacturing Co. v. Street & Smith, supra; Paul F. Beich Co. v. Kellogg Toasted Corn Flakes Co. (App. D. C.) 262 F. 640.

The crux, therefore, of the trade-mark branch of this case, is whether or not the products of the plaintiff and defendant belong to the same class, or belong to distinct and unrelated classes, not having the "same descriptive properties." It is undisputed that the plaintiff and its predecessor in business have always dealt in food products only, and that the defendant and its predecessors have always manufactured and sold tobacco, and have never dealt in food products. All the witnesses at the trial in the District Court testified in the most positive terms that food and tobacco products belong to different classes. Foods and tobacco are classified as distinct and unrelated products under the Trade-Mark Act. Tobacco products are in class No. 17; while "foods and ingredients of foods" belong to class No. 40. The Treasury Department treats them as of different classes. It has always taxed tobacco products, just as it did liquor products, but it has never taxed food products.

The Examiner of Interferences in the Patent Office found that tobacco and food do not possess the "same descriptive properties," and so belong to different classes. This view was also held by the examiner, the Acting Commissioner of Patents, and the District Judge. Food promotes the growth of animal or vegetable life. There is no nutrition in tobacco. It is merely a narcotic. Foods are used by all mankind as a matter of necessity, but this is not true of tobacco. State v. Ohmer, 34 Mo. App. 115; Liggett & Meyers Tobacco Co. v. Cannon, 132 Tenn. 419, 178 S. W. 1009, L. R. A. 1916A, 940, Ann. Cas. 1917A, 179.

The merchandise of the plaintiff and defendant belonged, therefore, to different classes. As the owner of a trade-mark, both on authority and reason, may not be restrained from its use on goods of one class, notwithstanding the identical trade-mark is used on goods of another class, we conclude that the defendant did not infringe plaintiff's trade-mark, and so may not be restrained from using its trade-mark on tobacco products.

[2] Although it did not infringe the trade-mark, is it guilty of unfair competition? Generically, the term "unfair competition" presupposes competition of some kind. Borden Ice Cream Company v. Borden's Condensed Milk Co., 201 F. 510, 514, 121 C. C. A. 200. And so courts have held that there must be a real, present, or prospective competition; that is, an endeavor to get the same trade from the same people at the same time, and that endeavor must on the defendant's part be unfair. National Picture Theatres v. Foundation Film Corporation (C. C. A.) 266 F. 208, 211.

There is no evidence that the defendant ever intended presently or prospectively to compete for the trade of the plaintiff. It could not have done so as long as they continued their distinct and unrelated lines of business, and there is no evidence that a change was ever contemplated by either. There was, therefore, no competition between them unfair or otherwise.

We are aware, however, that equity may be invoked without market competition. Emphasis should be placed on the word "unfair," rather than "competition." If by unfair and fraudulent means the plaintiff is injured and the public deceived, equity will enjoin, whether the injury comes through competition or in some other way. Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407, 159 C. C. A. 461, L. R. A. 1918C, 1039; Vogue Co. v. Thompson-Hudson Co. (C. C. A.) 300 F. 509, 512. Within the principles announced in these cases, or in any other way, has the defendant injured the plaintiff in its property or reputation?

We are satisfied that it has not. It has not tried to palm off its products as those of the plaintiff. It would not have been profitable to do so. The evidence shows that no company ever combined the manufacture and sale of food and tobacco. They belong to unrelated classes, and the union of the two would be incongruous and historically contrary to the experience and business judgment of those engaged in manufacturing or selling either class. In the correspondence between the parties, defendant wrote plain-

tiff:. "It could be of no conceivable advantage to us to have the public think that our tobacco product was manufactured by a packing establishment. Our concern has been in business for more than 150 years, and in that length of time has built an enviable reputation for the excellence of its tobacco products." The plaintiff's evidence on this subject consisted of indefinite and unauthorized statements of unidentified persons alleged to be defendant's salesmen. The evidence shows that its goods have in no way been confused with those of the plaintiff, so that, when a purchaser desired a certain brand of plaintiff's goods, he in fact secured those of defendant. Defendant carfully made prominent in its label the Lorillard origin of its products. The difference between their labels is so great and distinct that any purchaser, paying ordinary attention, need not and should not be mistaken, and certainly not deceived. In his opinion in the District Court Judge Lynch said: "If one should eliminate the word 'Beech-Nut' from both labels, it would be extremely difficult to locate any similarity at all between them. And each party has the right to the word 'Beech-Nut' for its distinct product."

The only injury, real or fancied, which the evidence indicates the plaintiff might sustain, is that some of its customers are prejudiced against the use of tobacco, and made inquiry to ascertain if it had embarked in the tobacco business, and threatened to stop dealing with it in case it had. This resulted from the similarity of trade-marks on distinct and unrelated classes of merchandise. But from confusion and injury caused by similarity of names the courts will not relieve. The defendant had the right to use its trade-mark, if it did so reasonably and honestly. It is not the use, but dishonesty in the use, that is condemned, and it is a question of evidence in every case whether the name or trade-mark has been used honestly or fraudulently. In other words, where persons or corporations have the right to use a name or trade-mark, courts will not interfere where the only confusion results from a similarity of names and not from the manner of the use. "The essence of the wrong in unfair competition consists in the sale of the goods of one manufacturer or vendor for those of another, and, if defendant so conducts its business as not to palm off its goods as those of complainant, the action fails." Howe Scale Co.

v. Wyckoff, Seamans & Benedict, 198 U. S. 118, 140, 25 S. Ct. 609, 614, 49 L. Ed. 972. Mr. Justice Strong, in the case of Canal Co. v. Clark, 13 Wall. 311, 327, 20 L. Ed. 581, said:

"It is only when the adoption or imitation of what is claimed to be a trade-mark amounts to a false representation, express or implied, designed or incidental, that there is any title to relief against it. True it may be that the use by a second producer, in describing truthfully his product, of a name or a combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product, but if it is just as true in its application to his goods as it is to those of another who first applied it, and who therefore claims an exclusive right to use it, there is no legal or moral wrong done. Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth."

These principles, founded alike on reason and authority when applied to the facts of this case, are decisive of the issues involved. The evidence, in our opinion, conclusively shows that both parties have acted in perfect good faith. Both have used the word "Beech-Nut" on their respective, but very different, labels because they thought that they had the legal right to do so. The plaintiff adopted its trade-mark without knowledge of the "Beech-Nut" trade-mark of the Harry Weissinger Tobacco Company. The defendant naturally adopted the "Beech-Nut" trade-mark for its products, because it owned the old Harry Weissinger trade-mark and thought it was acting within its legal rights. The plaintiff is proud of its "position substantially at the top of a highly competitive industry." The defendant is one of the great tobacco companies of this country, with a Lorillard reputation stretching back into three centuries. Neither needed nor desired the reputation of the incompatible business of the other.

The evidence does not disclose anything on which infringement of the trade-mark or unfair competition can be based. This conclusion relieves us from the consideration of much that was pressed upon us at the argument.

The decree dismissing the bill is accordingly affirmed.