## PHILCO CORPORATION v. F. & B. MFG. CO.

No. 9474.

United States Court of Appeals Seventh Circuit.

Dec. 3, 1948.

Edward S. Rogers, William T. Woodson and Beverly W. Pattishall, all of Chicago, Ill., for appellant.

John A. Marzall and Lloyd C. Root, both of Chicago, Ill., for appellee.

Before KERNER and SPARKS, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Its suit for infringement of trade-mark having resulted in judgment for defendant, plaintiff appeals.

In its complaint, plaintiff averred that defendant is engaged in distribution of automotive ignition parts, including condensers, relays, switches, starter repair parts, coils and distributors under the brand name "Filko"; that this name is a colorable imitation of plaintiff's registered trade name "Philco"; that defendant's merchandise is of substantially the same descriptive properties as plaintiff's products as described in plaintiff's several trade-mark registrations, and that the continued use of the name "Filko" is likely to result in such confusion as to cause defendant's goods to be passed as those of plaintiff.

Defendant answered that John Filko, an executive officer of defendant, entered business as a tool and diemaker for himself in 1923, in Chicago, and shortly thereafter, with one Bohm, engaged in the manufacture of automotive ignition replacement parts; that the partnership continued for 2½ years under the trade name of F. & B. Mfg. Co.; that from 1926 to 1937, Filko was sole owner of and conducted the business under the same trade name; that in 1937 he formed a new partnership under the same name with one Rapp, which persisted until June 1946, when the defendant corporation F. & B. Mfg. Co. was formed; that, while he was in business alone doing business as F. & B. Mfg. Co., Filko adopted and applied his name to the automotive ignition replacement parts which he manufactured and has since successfully continued the business; that, during all of said time, the repair parts were known as Filko parts; that neither he nor the company has dealt in any other character of product except some metal-stamping; that plaintiff's trade-mark "Philco" has been used in connection with radios and their appliances and never in connection with replacement ignition parts.

The Trade-Mark Act of 1946, Title 15, Section 1051 U.S.C.A. is determinative of the rights of plaintiff. As announced by this court in California Fruit Growers Exchange v. Sunkist Baking Co., 7 Cir., 166 F.2d 971, the Act of 1905 was repealed by the Act of 1946. Under the earlier act, a remedy was granted to the owner of a trade-mark when any person colorably imitated his mark "in connection with the sale of merchandise of substantially the same descriptive properties as those set forth in such registration". § 16, 33 Stat. 728. The present act provides that a cause of action for infringement exists if the colorable imitation "is likely to cause confusion or mistake or to deceive purchasers as to the source of origin of such goods * * *." 15 U.S.C.A. § 1114(1) (a). The Supreme Court has held that in the case of marks susceptible of legitimate uses with respect to their primary sense, the reproduction, copy or imitation which constitutes infringement must be such as is calculated to mislead the public with respect to the origin or ownership of the goods and thus to invade the right of the registrant to the use of the name or term as a

designation of his merchandise. Thaddeus Davids Co. v. Davids, 233 U.S. 461, 34 S.Ct. 648, 58 L.Ed. 1046, Ann.Cas.1915B, 322. In other words, it was incumbent upon plaintiff to prove that defendant has made a colorable imitation of its registered trade-mark, which is likely to cause confusion as to the source of origin of the goods. In making out this proof, whether the goods are of similar character is not, under the present act, the determining factor, but presence or lack of such similarity is a circumstance pertinent to the issue of whether there exists imitation which is likely to cause confusion as to the source of origin. With that standard in mind we approach the issue presented.

The court found that Filko is the surname of one of defendant's officials; that defendant has never dealt in any goods such as those manufactured by plaintiff or mentioned in the "Philco" registrations; that defendant does not sell to the same class of persons as those to whom plaintiff sells but distributes its automotive ignition repair parts directly to wholesalers, jobbers and service stations or garages, while plaintiff, through its distributors, sells radios and radio parts to the consumer; that plaintiff advertises in publications reaching consumers while defendant advertises only in trade journals addressed to the automotive industry; that plaintiff and defendant are not in competition; that Filko is not a colorable imitation of Philco, and that no confusion exists or is likely to exist.

These are findings of fact based upon evidence produced before the trial court, in part controversial in character. Several witnesses appeared; of their credibility the court had full opportunity to judge as they testified in open court. In such a situation we are not at liberty to disturb the findings of fact unless we can say as a matter of law that the court's interpretation of the evidence is clearly erroneous.

We think there can be no dispute that in general the goods of plaintiff and those of defendant are not in competition. The evidence clearly supports the finding that defendant is a manufacturer of automotive ignition repair parts sold to jobbers and dealers for replacement of defective parts in automobile ignition systems, not intended to and not offered as having any utility in the installation of radios or other equipment manufactured by plaintiff or the products mentioned in the trade-mark registrations. So far as the facts of this cause are concerned, such of plaintiff's products as are used in automobiles are usually sold in connection with radios installed in automobiles and have nothing to do with and are not intended to be used in repair of defective ignition parts of the motive power unit of the car. The latter parts, defendant's products, include stationary and movable electrical parts in the automobile ignition system serving to carry a current of electricity, so operating as to cause and control ignition of the gas in the motor, thus producing the explosions necessary to operation of an internal combustion engine. Furthermore, defendant's products are intended and utilized for replacement only and, inasmuch as different manufacturers of different makes of automobiles employ different kinds of ignition systems, the manufacture of necessary repair parts covers a wide field in order to embrace not only different automobile manufacturers but, frequently also, different models of each manufacturer. Defendant makes no devices for initial equipment or installation. It contributes nothing to the original make-up of the ignition system. It produces only parts designed to repair worn out or defective parts of an already installed ignition system. While it is entirely probable that some of defendant's articles might be used in an electrical hook-up with some of plaintiff's parts manufactured for use in radio attachments, there is no testimony that they were ever so actually used or that it is practical so to use them or that there is any likelihood that they will ever be so used.

Plaintiff's goods are sold widely to the general public. Its advertising is by radio or popular magazine and newspaper advertising. Defendant's products are sold to men in industry who desire repair parts for ignition plants in automobiles, and it advertises in trade journals to reach jobbers, garages and service stations. De-

fendant's parts are not sold as substitutes for parts in plaintiff's products. The packages of the two parties do not look alike. There is no resemblance between them, either upon a casual observation or upon a more careful scrutiny,—one is green, the other, blue. We think this and other evidence, which we think it unnecessary to reiterate, furnishes ample ground for the court's finding and conclusion to the effect that plaintiff and defendant were not in competition but were appealing to different groups of the public and reaching entirely different markets, with no reasonable likelihood of confusion. A distinctive mark or name will be broadly protected as a trade-mark, but general words or names, which have been applied to and used and registered as trade-marks for a large number and variety of products, will be protected only within the range of use on similar goods. Pease v. Scott County Milling Co., D.C.Mo., 5 F.2d 524. The mere fact that one person has adopted and used a trade-mark on his goods does not prevent the adoption and use of the same or a similar trade-mark by others on articles of a different description. Walgreen Drug Stores v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956, certiorari denied 311 U.S. 708, 61 S.Ct. 174, 85 L.Ed. 459, rehearing denied 311 U.S. 730, 61 S.Ct. 391, 85 L.Ed. 475. See, also, Certain-Teed Products Corporation v. Philadelphia & Suburban Mortgage Guarantee Co., 3 Cir., 1931, 49 F.2d 114. Thus a food products trade-mark is not infringed by its use by manufacturer of tobacco, a narcotic. Beech-Nut Packing Co. v. P. Lorillard Co., 3 Cir., 7 F.2d 967, affirmed 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810. Where a trade-mark was registered for "chemicals, medicines and pharmaceutical preparations" relief was denied against its use on cigars. Peninsular Chemical Co. v. Levinson, 6 Cir., 247 F. 658. See also Gotham Silk Hosiery Co. v. Narrow Fabric Co., 102 F.2d 407, 26 C.C.P.A. (Patents) 980; Nieman v. Plough Chemical Co., 6 Cir., 1927, 22 F.2d 73, certiorari denied 277 U.S. 603, 48 S.Ct. 563, 72 L.Ed. 1010.

In a few isolated instances, upon which plaintiff relies to prove likelihood of confusion, persons were employed by plaintiff to approach certain dealers and ask for "Philco" ignition parts for a certain model of a DeSoto automobile. There are no Philco parts for repairs of ignition systems. The dealers, obviously knowing that such parts were made, not by Philco, but by Filko, properly served the purchaser by supplying him with the proper repair parts for the ignition set-up of a DeSoto automobile of the model inquired about. This is far short of proof of attempt to sell Filko ignition repairs in place of something which Philco manufactured. The evidence in this respect is far from convincing and certainly insufficient to substantiate a decision upon our part that the court's finding of fact in this respect was clearly erroneous. Indeed, we think the evidence amply supports the finding that there is no likelihood of confusion as to the source of origin. See Gold Dust Corporation v. Hoffenberg, 2 Cir., 87 F. 2d 451; Gotham Silk Hosiery Co. v. Narrow Fabric Co., 102 F.2d 407, 26 C.C.P.A. (Patents) 980; Nieman v. Plough Chemical Co., 6 Cir., 22 F.2d 73; Thomas Kerfoot & Co. v. Louis K. Liggett Co., 1 Cir., 67 F.2d 214; Rytex Co. v. Ryam et al., 7 Cir., 126 F.2d 952.

Plaintiff asserts that the court should have found that defendant was seeking to justify its action by an unauthorized use of the family name Filko. We think it clear from what we have said that there was no colorable imitation in marking any merchandise likely to cause confusion as to the source of origin. It should be observed in this connection that the use of one's name in his business is proper unless it is so used as fraudulently to cause likely injury to his competitor. Thus the Supreme Court said, in Brown Chemical Co. v. Meyer, 139 U.S. 540, 544, 11 S.Ct. 625, 627, 35 L.Ed. 247: "A man's name is his own property, and he has the same right to its use and enjoyment as he has to that of any other species of property. If such use be a reasonable, honest, and fair exercise of such right, he is no more liable, for the incidental damage he may do a rival in trade than he would be for injury to his neighbor's property by the smoke issuing from his chimney, or for the fall of his neighbor's house by

reason of necessary excavations upon his own land. These and similar instances are cases of damnum absque injuria." To similar effect is Singer Mfg. Co. v. June Mfg. Co., 163 U.S. 169, 187, 16 S.Ct. 1002, 41 L.Ed. 118.

For many years last past, Filko has employed his name as designating the name of his ignition repair parts; the record is devoid of evidence of any application of that name by defendant to any goods such as those manufactured by plaintiff. Thus, as we have said, the court's finding that the parties are not in competition is supported by adequate evidence. Defendant's activities have been confined to a field entirely isolated from that occupied by plaintiff. Being in two entirely different fields of activity there can be no confusion of source of origin.

The judgment is affirmed.