## BENROSE FABRICS CORP. v. ROSENSTEIN.

No. 10042.

United States Court of Appeals Seventh Circuit.

July 10, 1950.

Daniel H. Kane, Philip T. Dalsimer, New York City, Carlton Hill, Chicago, Ill. The Firm of Charles W. Hills, Chicago, Ill., Duell & Kane, New York City, for appellant.

357

Harold A. Fein, Chicago, Ill., for appellee.

Before KERNER, FINNEGAN and LINDLEY, Circuit Judges.

LINDLEY, Circuit Judge.

The suit of plaintiff, owner of registrations No. 504803, No. 418949 and No. 422622 of the trade-mark "Benrose," charging defendants with infringement and unfair competition having resulted in judgment for defendants, plaintiff appeals. It contends (1) that the proof clearly reflects likelihood of confusion of source of origin between defendants' trade-name "Ben Rose" and plaintiff's trade-mark and trade-name "Benrose," (2) that, though in "the absence of a self-imposed restraint, a person has the right to use his name in conducting his business," as the trial court found, the rule is not applicable here, inasmuch as the evidence allegedly establishes that Rose is not the name of defendants; that their name was originally Rosenstein, changed only in 1947, long after plaintiff's rights had come into being, and that, consequently, as newcomers in the field, they should be compelled so to limit the use of their name in business as not to infringe upon plaintiff's established rights and, finally, that the judgment is not supported by the evidence and should be reversed.

The trial court found that plaintiff has for many years been converting and marketing in large quantities, primarily for wearing apparel, silk, cotton and synthetic fabrics printed by the roller press process, selling at from 65 cents to $1.00 per yard to the wearing apparel trade and to stores which in turn retail them; that defendants began in 1946 to impress upon raw textiles and wallpaper, by hand process, designs proper and fitting for use in upholstery, interior decorating and home furnishings only, selling to architects, decorators and the interior decorating sections of department stores at $10.00 per yard; that plaintiff has not, except in a slight and incidental quantity, produced or marketed its products for use in home furnishing or upholstery; that defendants have not engaged in any business competitive with that of plaintiff; that plaintiff has produced no proof that the buying public or any customers of plaintiff have been confused by defendants' use of the trade-name "Ben Rose"; that the mark "Benrose" has not acquired a secondary meaning associated with the product of plaintiff; that plaintiff has not acquired the exclusive right to use of the trade name "Benrose," and that defendants have not infringed plaintiff's rights under the trade-mark registrations.

Though the court made no specific finding as to likelihood of confusion as to source of origin, it found that plaintiff had failed to prove any averment of its "complaint entitling it to any relief." The complaint contained averments that defendants' actions, if continued, would "deceive and confuse the public into believing that defendants' products are the genuine products of plaintiff or have some connection with the plaintiff or its products" and "mislead and deceive the public into believing that it is purchasing plaintiff's products." It follows from this finding that the court has found that plaintiff failed to prove the averments quoted, i. e., that confusion as to source of origin was likely to occur. This is also an effectual finding that plaintiff had failed to prove the charge of unfair competition. It is immaterial that some of these findings appear in the conclusions of law, for their true nature is not determined by their labels. Shapiro v. Rubens, 7 Cir., 166 F.2d 659.

Certain facts are undisputed. Thus it is clear that since 1924 plaintiff has used the trade-name "Benrose" as part of its corporate name and applied it to fabrics which it has produced and sold. Those fabrics consist of silk, cotton and synthetic textiles and are largely if not entirely used in making dresses and other wearing apparel. Almost one-third of plaintiff's output goes to the "cutting up trade," which converts it into clothing, and the remainder to retail stores which in turn sell to consumers, who then use the purchased fabric in any way they desire, i. e., to make clothes or otherwise to avail themselves of its utility. Apparently an inconsiderable part of it is used for purposes other than clothing. Plaintiff prints its fabrics by the roller press process, resulting, relatively speaking, in mass production. It sells at popular prices.

It is clear also that defendants began their business activities in February 1946 under the name "Ben Rose." Continuously since that time they have converted raw fabrics into hand printed, personally designed finished products, by what is known as the silk screen process. Their products have been used primarily in interior decorating, sales originally being made only to architects, designers or decorators. As their business has grown, they have extended their sales to certain sections of department stores. Their products and those of plaintiff are sometimes found on sale in the same department store, though in different sections,—plaintiff's in fabrics and defendants' in interior decorating. Defendants' volume has grown from $3,000 in the first six months to over $83,000 in the last like period. Their prices, obviously because of the hand printing process employed, are much higher than plaintiff's.

The facts relating to defendants' adoption of the name Rose likewise are not largely in dispute. In this connection the court found that defendant Ben Rose first adopted that name in 1936 and continuously used it for all social, family and business purposes, except during the period of his service in the Navy, and that defendants "at no time, indulged in or committed any act, directly or indirectly, in the operation of their business, or in the use of the name Ben Rose as their trade name, which constitutes fraud on the plaintiff or on the public" or infringement of plaintiff's registrations. Defendant Benjamin Rose is the son of Mr. and Mrs. Max Rosenstein. He came to Chicago in 1936 to live with his brother, who had taken the name of Rose, and to attend art school. From that time on he seems to have used the name of Rose except in certain business and public record matters. Thus he was married in 1942 as Rosenstein and enlisted in the Naval Reserve under the same name. In 1946 he and his wife applied to the Ilinois court for leave to change their legal names to Benjamin Rose and Frances Rose, and in early 1947 the court entered a decree granting that relief. For about six months, before he joined the Navy, Benjamin used the name, Ben E. Rose. Plaintiff makes no claim that any fraud was intended or accomplished by the change from Rosenstein to Rose, except in so far as it resulted in the alleged infringement of plaintiff's rights.

From the foregoing facts and certain others, some controverted and some undisputed, with which it is unnecessary to belabor this opinion, it seems clear to us that the evidence was of such character and weight as to support the findings and conclusions. We can conceive of no right upon our part to set them aside, for we cannot say, as a matter of law, that they are clearly erroneous. True, with other courts, we have announced that if findings rest upon documents, depositions or upon mere comparison of names, if credibility of witnesses is not involved, or if the trial tribunal has no opportunity to observe the witnesses, a court of review is as well qualified to pass upon the weight of evidence as is the trial court, but where, as here, conflicting stories are told by witnesses whose credibility is at stake, we may not supersede the determination of the finder of facts and substitute our judgment for his. It is not a question of whether we would have made the same finding; it is rather a question of whether the evidence substantially and adequately supports it. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. Jackson v. Goes, 7 Cir., 1950, 181 F.2d 849.

It was incumbent upon plaintiff to prove likelihood of confusion of source of origin. Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 170 F.2d 958. This, upon conflicting testimony, the trial court found, it has not done. The court obviously found, as it had a right to do, that plaintiff and defendants are not in competition; that they cater to different classes of purchasers and consumers; that their products are radically different and that there is wholly lacking proof of likelihood of confusion, an essential ingredient of trade-mark infringement. Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 170 F.2d 958.

Obviously the two trade-names are similar, if not completely identical, but that fact alone is not sufficient to warrant

equitable interference. "In the absence of contract, fraud or estoppel, any man may use his own name in all legitimate ways and as the whole or a part of a corporate name"; it is only when the use is dishonest or fraudulent that the court may interfere; courts will not act where the only confusion, if any, results from similarity of names and not from the manner of use. Howe Scale Co. v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S.Ct. 609, 49 L. Ed. 972. Here the court found that no confusion had been proved and that plaintiff had failed to prove the averment of likelihood of confusion. Though whether the goods are similar is not the test, such evidence may be pertinent upon the ultimate question of whether there is likelihood of confusion. Philco Corp. v. F. & B. Mfg. Co., 7 Cir., 170 F.2d 958. Upon that issue the court found, upon disputed evidence, that similarity of product did not exist and the record supplies adequate evidence to support the finding.

■ The defendants contended and the trial court held that plaintiff's trade-mark registrations under the 1905 Act limited its right to the exclusive use of the name "Benrose" to its use on fabrics intended for wearing apparel only, and that, consequently, the use by defendants of the name "Ben Rose" on fabrics not intended for such use but rather for the interior decorating and home furnishing fields is not an invasion of any right accruing to plaintiff by virtue of those registrations. The file wrappers on these registrations demonstrate the soundness of this determination. Thus, the registration No. 418949 file wrapper discloses an application claiming use of the trade-mark "A Benrose Fabric" for "Ladies, Misses and Girl's Dresses, Blouses, Playsuits, Pinafores and Skirts in Class 39 Clothing," subsequent disclaimer of the word "Fabric," and final registration of the mark limited to the wearing apparel described. In the file history of registration No. 422622 we find an application for a mark showing a drawing of a draped fabric and the words "Benrose Crepes," a claim for use of the mark for "textile fabrics in the piece of cotton, silk, rayon, protein fibres, and combinations thereof, *of a character adapted for personal wear*" (emphasis supplied), and, finally, registration of the mark so limited. The effect of these disclaimers and amendments was, we think, inevitably to limit plaintiff's right to the exclusive use of the name "Benrose" to fabrics of the character described in the registrations as distinguished from fabrics "in the nature of upholstery fabrics" or fabrics designed for use by architects and interior decorators. Walgreen Drug Stores v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956, 960.

■ The third registration, No. 504803, issued under the Lanham Act, Trade Mark Act of 1946, 60 Stat. 427, 15 U.S.C.A. § 1051 et seq., relates to the use of the single word "Benrose." The registration, as finally published, states that plaintiff "has adopted and is using the trade-mark shown in the accompanying drawing for textile fabrics in the piece of silk and synthetic fibers, in Class 42, Knitted, netted and textile fabrics, and substitutes therefor, * * *." This registration, obviously, does not by its language, limit plaintiff's use of its trade-mark to fabrics of a character adapted for personal wear. It is clear, however, that it bestows on plaintiff no broader rights than did the registrations under the Act of 1905, for the law is that the exclusive right of the owner of a trade-mark grows out of his *use* of the trade-mark, not out of its mere *adoption,* Trade-Mark Cases, 100 U.S. 82, 94, 25 L.Ed. 550; Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 413, 36 S.Ct. 357, 60 L.Ed. 713. Consequently, the District Court properly held that plaintiff's right to the exclusive use of this registered trademark is limited to use on those fabrics to which it has been appropriated and is being appropriated in plaintiff's existing business —i. e., production of fabrics of a character adapted for personal wear, Beech-Nut Packing Co. v. P. Lorillard Co., 3 Cir., 7 F.2d 967, 969.

These limitations support and reinforce the District Court's conclusion that defendants have not infringed upon plaintiff's trade-mark rights or committed acts amounting to unfair competition. Upon this determination, as well as upon the findings of fact previously discussed, the judgment must be and is affirmed.