## CERTAIN–TEED PRODUCTS CORPORA-TION v. PHILADELPHIA & SUBURBAN MORTGAGE GUARANTEE CO.

### No. 4432.

Circuit Court of Appeals, Third Circuit.
April 6, 1931.

Emerson R. Newell, of New York City, for appellant.

A. B. Stoughton, of Philadelphia, Pa., for appellee.

Before BUFFINGTON and WOOLLEY, Circuit Judges, and THOMPSON, District Judge.

BUFFINGTON, Circuit Judge.

In this case the court below dismissed a bill filed by the Certain-Teed Products Corporation, whose products are roofing and other building materials, against the Philadelphia & Suburban Mortgage Guarantee Company, whose business is buying mortgages and reselling them with the added security of its guaranty of their principal and interest. The bill prayed the defendants be enjoined from its use of a slogan, "A guaranteed mortgage is a certainteed income." No similarity or simulation of product is involved. No fraud, deception, or confusion in the minds of the public is shown or threatened. After a study of the case, we are satisfied the bill was rightly dismissed. The proofs, the pertinent decisions, and indeed the entire case is so fully and satisfactorily discussed in the comprehensive opinion of Judge Kirkpatrick, that a further one by this court could be but a labored effort to clothe in other words what he has said. Accordingly we limit ourselves to adopting his

opinion, which is printed in the margin,[1] as our own, and so affirm the decree below.

[1] Kirkpatrick, District Judge.

The corporate name of the plaintiff in this case is "Certain-Teed Products Corporation." In 1912 the plaintiff's predecessor, General Roofing Manufacturing Company, began to use the word "Certain-Teed" as a trade-mark, and had it registered. At that time the business of the company was the manufacture and sale of roofing materials. Since then the business has been gradually expanded in volume, in territorial extent, and in variety of products, until at the present time the plaintiff manufactures and sells, in addition to roofing materials, linoleum and oilcloth, paints, varnishes, polish, beaverboard, plaster, including dental plaster and plaster of paris, and various other products more or less closely related to those named. From time to time as new products were added, the word "Certain-Teed" was used and registered as a trade-mark in connection with them. In 1917 the business of General Roofing Manufacturing Company was reorganized and the present corporate name, taken from the trade-mark, was adopted. The plaintiff sells its product in every state in the country, and its annual business amounted in 1929 to $30,000,000. Since 1917 it has averaged an annual expenditure of $500,000 for advertising, in all of which it stresses its corporate name and trade-mark.

The defendant deals in guaranteed mortgage certificates, purchasing mortgages with its own funds and then selling fractional interests therein, evidenced by certificates and guaranteed as to principal and interest. Its business is limited to the city of Philadelphia and nearby territory. For about five years the defendant has been using, in connection with its advertising matter, the slogan, "A guaranteed mortgage is a certainteed income." The slogan appears on its letterheads, on circulars, on calendars, and in street car advertising. A seal or device bearing the slogan is also printed upon the actual certificates of mortgages which the defendant sells, and the same device appears upon some of its letterheads and advertising matter. The defendant never uses the slogan except in connection with its own corporate name, and, in the advertising in which the slogan appears, the corporate name is featured much more prominently than the slogan. The defendant nowhere refers to its securities as "certainteed mortgages," or "certainteed certificates," or the like.

The defendant is not and up to the present time has not been in competition with the plaintiff in any sense of the word. It appears that the plaintiff has under consideration a plan for the financing of certain related businesses and also the financing of prospective purchasers of its products who wish to build or improve houses. This plan might involve the sale of securities to the public, in which case such securities might or might not be sold under the plaintiff's name. That I think is about as far as the testimony on this point goes. The defendant, of course, has never had any intention of ever dealing in any of the manufactured products now sold by the plaintiff.

The plaintiff does not contend that section 16 of the Trade-Mark Statute of 1905 [15 USCA § 96] applies to this case, and in substance concedes that in this action he must stand upon his common-law rights.

The issue here is the right to restrain the use of a coined word which is part of a corporate name, where the use complained of is a noncompeting and totally unrelated business, and is merely part of an advertising slogan. If the plaintiff's position is sustained, rights in words would be carried further than in any reported case that has been brought to my attention. I do not suppose that this slogan is a particularly valuable asset to the defendant, or that it would suffer very much harm if it were restrained from using it, but care must be taken not to allow that consideration to control the decision. The important question is the extent of the plaintiff's right. Upon that question certain general principles are well settled.

First. The plaintiff has certain rights in the word "Certain-Teed" as a trade-mark merely, but these rights give him no standing in this case to restrain the defendant's use of it. "The mere fact that one person has adopted and used a trade-mark on his goods does not prevent the adoption and use of the same trade-mark by others on articles of a different description." American Steel Foundries v. Robertson, 269 U. S. 372, 46 S. Ct. 160, 162, 70 L. Ed. 317. "There is no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with which the mark is employed * * * its [the trade-mark's] function is simply to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his. * * * In truth, a trade-mark confers no monopoly whatever in a proper sense, but is merely a convenient means for facilitating the protection of one's good-will in trade by placing a distinguishing mark or symbol—a commercial signature—upon the merchandise or the package in which it is sold." United Drug Co. v. Rectanus Co., 248 U. S. 90, 97, 39 S. Ct. 48, 63 L. Ed. 141. It follows that a plaintiff cannot restrain the use of a word or symbol as a trade-mark merely, if the use is in connection with noncompeting and unrelated goods. "* * * Since its sole office is to indicate that the goods of the same general class to which it is attached emanate from a single source or reach the consumer through the same channels of trade * * * the proprietor of a trade-mark is without right to forbid or exclude the use of the same mark, words, or symbol by another upon goods of a class and quality so different from those of the original user as to preclude the probability that purchasers will be misled into believing that the different articles spring from a common source." Standard Oil Co. v. California Peach & Fig Growers, Inc. (D. C.) 28 F.(2d) 283, 284, 285 (The Nujol Case). See also Hanover Star Milling Co. v. Metcalf, 240 U. S. 403, 413, 36 S. Ct. 357, 60 L. Ed. 713; Ainsworth v. Walmsley, L. R., 1 Eq. C. A. S. 518, 524.

Second. The law of trade-marks, however, is but part of the law of unfair competition, and under that law, when a unique, coined, or fanciful word has been adopted as part of the corporate name, all authorities agree that the owner has rights which are considerably broader than his right in it as a mere trade-mark. "A corporate name seems to fall more appropriately into the latter class. [That is, trade-names as distinguished from trade-marks.] But the precise difference is not often material, since the law affords protection against its appropriation in either view, upon the same fundamental principles. [That is, the general law of unfair competition, the general purpose of which is to prevent one person from passing off his goods or business as the goods or business of another.] The effect of assuming a corporate name by a corporation under the law of its creation is to exclusively appropriate that name." American Steel Foundries v. Robertson, supra.

Third. While the adoption of a coined word as part of a corporate name is an exclusive appropriation of that name, it does not follow that he who has adopted it can restrain its use by all persons under all circumstances. The adopter's rights against a subsequent user depend upon a further element—the likelihood of the use producing confusion or uncertainty in the mind of the public. "The general doctrine is that equity not only will enjoin the appropriation and use of a trade-mark or trade-name, where it is completely identical with the name of the corporation, but will enjoin such appropriation and use where the resemblance is so close as to be likely to produce confusion as to such identity, to the injury of the corporation to which the name belongs. * * * Judicial interference will depend upon the facts proved and found in each case. * * * But where less than the whole name has been appropriated, the right of registration will turn upon whether it appears that such partial

appropriation is of such character and extent that, under the facts of the particular case, it is calculated to deceive or confuse the public to the injury of the corporation to which the name belongs." American Steel Foundries v. Robertson, supra, 269 U. S. 372, 46 S. Ct. 160, 162, 70 L. Ed. 317. In the foregoing the court was referring to the right of registration, but that depends upon the same principles as the right to restrain the use of the word by another. In every case brought to my attention in which the use of a word in a noncompeting business has been restrained, the plaintiff's right has turned upon the presence of possible or likely confusion. Whether a remote possibility of such confusion is sufficient or whether there must be some reasonable probability is a question which will be discussed later. The point here is that the plaintiff's right depends upon the element of confusion being present. Thus in Aunt Jemima Mills v. Rigney & Co. (C. C. A.) 247 F. 407, 409, L. R. A. 1918C, 1039, the court said: "It is said that even a technical trademark may be appropriated by any one in any market for goods not in competition with those of the prior user. * * * But we think that goods, though different, may be so related as to fall within the mischief which equity should prevent. Syrup and flour are both food products, and food products commonly used together. Obviously the public, or a large part of it, seeing this trade-mark on a syrup, would conclude that it was made by the complainant. Perhaps they might not do so, if it were used for flatirons." Again in Wall v. Rolls-Royce of America, Inc., 4 F.(2d) 333, 334, the Circuit Court of Appeals for the Third Circuit said: "* * * What would more naturally come to the mind of a man, with a radio tube in his receiving set, on which was the name 'Rolls-Royce,' with nothing else to indicate its origin, than for him to suppose that the Rolls-Royce Company had extended its high grade of electric product to the new, electric-using radio art as well." In an earlier case in the same circuit (Akron-Overland Tire Co. v. Willys-Overland Co., 273 F. 674, 676), the plaintiff made automobiles and the defendant made tires, neither competing directly with the other. The court said: "* * * Yet the fact remains that the business of both is so connected with automobiles that the public, in buying the stocks, securities, and retread tires of the defendant company, by the use of the word 'Overland' in connection therewith, will, by such descriptive word, be led to believe it is buying property or articles owned or dealt in by the plaintiff or one of its subsidiary companies." The British Kodak Case (Eastman Co. v. Kodak Cycle Co., 15 R. P. C. 105) was based upon the likelihood of confusion in the manufacturing of kodaks and bicycles.

We may take it as settled, therefore, that the plaintiff's rights, even where the word used by the defendant is part of the plaintiff's corporate name, depend in some degree at least upon the likelihood of the public confusing either the goods of the plaintiff with the business of the defendant or the business of the plaintiff with the business of the defendant. As to the degree in which this element must be present I do not think the cases go as far as the plaintiff contends, namely a possibility of confusion of identity. If they did, it seems to me that it would be tantamount to giving the plaintiff the absolute right to restrain the use of the word under all circumstances and in connection with any business or any kind of goods. It is obvious that this is not the rule, or it would have been so stated long ago. I suppose there is always a remote possibility of some confusion arising from the use of the same word in connection with different businesses. But, in cases of this kind, the courts do not deal with possibilities, and in every case in which the defendant has been restrained there has been a reasonable likelihood of confusion existing, and I take this to be the real question.

At this point the case calls for a fact finding, and from the record I am convinced that there is no reasonable likelihood of the defendant's use of this word creating any confusion in the mind of the public or leading the public to believe that either his business or his securities are the business or securities of the plaintiff, and I so find. If it were necessary I would go further and say that there was no possibility of such confusion, taking that word as it is used in ordinary affairs of life and excluding contingencies which though remote and speculative may still be imagined as possible. My reasons for so holding are as follows:

In the first place the character of the word itself must be considered. While I agree with the plaintiff that the word is coined, fanciful, and unique, not found in the dictionary, I emphatically disagree with his contention that it is meaningless. Undoubtedly the fact that it is a coined word gives the plaintiff more extensive rights than if it were a word of general usage even though part of its corporate name. The principle of the "Blue Ribbon" Case (Pabst v. Decatur [C. C. A.] 284 F. 110) does not apply; but even under this phase of the rule, the plaintiff's rights are not as broad as they would be if the word had no meaning at all, as in the Aunt Jemima and Nujol Cases. The word is clearly a contraction for the expression "made certain." It could be used in ordinary conversation without the slightest doubt or confusion as to what was meant. A training school might offer its prospective student a "certainteed future," or a sermon might be preached upon the subject of "certainteed salvation" without creating any great impression of incongruity. Note particularly that the defendant uses it in a sentence as a word with a meaning more readily understood than the plaintiff's use. In fact it may be that the plaintiff's use of it in connection with its products is what gives rise to the impression in his mind that it is meaningless. It is true that this contention might have been made in the Rolls-Royce Case, but there the defendant was selling his goods as "Rolls-Royce radio tubes." He added that the tubes were "like their name, significant of quality." There was thus a deliberate intent to trade upon the plaintiff's name in connection with his goods themselves. Suppose in this case the defendant's slogan had been "Our securities will give you a Rolls-Royce income." Even so, there would have been more ground for the plaintiff's position because the secondary meaning, if any, of the word "Rolls-Royce" is decidedly more remote and not as generally understood as the word "certainteed."

In the second place, I can see no evidence whatever of any fraudulent intent on the part of the defendant to appropriate something that does not belong to him. His explanation of the manner in which he hit upon the word is entirely reasonable. In fact, it seems to me it is one of those words which might easily have come to the minds of thousands of persons and have grown into ordinary English usage. The defendant did not sell his mortgages as "certainteed" mortgages. He did not use the word in its hyphenated form "Certain-Teed" in imitation of the plaintiff. His use of the slogan is comparatively unobtrusive, and is always coupled with a prominent display of his own corporate name. While it is true that this is not necessarily a defense, it bears upon the question of intent and also upon the likelihood of confusion. He simply used the word in a slogan as though it were an ordinary English word.

The bill may be dismissed with costs.