**SEARS, ROEBUCK & CO.**

v.

**JOHNSON et al.**

Civ. No. 13305.

United States District Court,
E. D. Pennsylvania.

May 3, 1954.

**956**

Bernard Eskin, Franklin H. Spitzer, Jr., Wolf, Block, Schoor & Solis-Cohen, Philadelphia, Pa., for plaintiff.

Abrahams & Loewenstein, Philadelphia, Pa., for defendants.

KIRKPATRICK, Chief Judge.

The trade name involved in this infringement suit is "Allstate", a word which the plaintiff, Sears, Roebuck and Co., uses in connection with that part of its mail order business devoted to the sale of automobile tires, parts and accessories and which a wholly owned Sears, Roebuck subsidiary carrying on an automobile insurance business has adopted as part of its corporate name. The defendant partnership gives instruction in automobile driving and operates a school under the name of "All-State School of Driving".

■ The names are, of course, similar. However, whether there is the confusing similarity, as that term is known in the law, which is necessary to furnish the plaintiff ground for injunctive relief, depends upon more than a likeness in sound or appearance of the words in question. Trade names, not only similar but identical, have often been held not confusingly similar. "The ultimate test of whether or not there is a confusing similarity between a designation and a trade-mark or trade name which it is alleged to infringe is the effect in the market in which they are used * * * the issue is whether an appreciable number of prospective purchasers of the goods or services in connection with which the designation and the trademark or trade name are used are likely to regard them as indicating the same source. That a few particularly undiscerning prospective purchasers might be

so misled is not enough." Restatement, Torts, § 728. Thus, "confusing similarity" means likelihood of confusion of source or origin. Of course, it cannot be said that there is no chance that anyone will think that the defendant's driving school is a Sears, Roebuck activity, but bearing in mind the wide difference between the products and services offered by the plaintiff and the defendant, I do not think that the evidence establishes more than possible confusion on the part of an inappreciable number of undiscerning persons. The evidence of the survey conducted by the plaintiff loses a good deal of its impressiveness when one remembers that the questions were orally put. Spoken, the two words sound exactly alike, but it is by no means certain what the result would have been had the persons interviewed been shown the defendant's "All-State" in print. Of course, a trade name cannot be appropriated by inserting spaces between its letters or by changing the spelling and leaving the pronunciation the same, but in assessing the value of evidence, such differences must be borne in mind and this is particularly true where the trade name was created by combining two ordinary English words in the sequence in which they are ordinarily used.

■ The law protects the owner of a trade name against harm to his business caused or threatened by another's using it to mislead prospective purchasers. Parenthetically, it is customary to speak of the "owner" of a trade name, but actually he does not own the word. He has only the exclusive right, subject to certain limitations, to use it in commerce for particular purposes. Is this plaintiff's interest in the name "protected with reference to the * * * services * * * in connection with which the actor (here, the defendant) uses his designation", Restatement, Torts, § 717b.

■■ There is no competition whatever between these parties. The defendant does not sell any merchandise of any kind and the plaintiff does not sell any services, except in connection with the

installation, maintenance and repair of merchandise sold by it, and there is no possibility that the defendant will divert any of the plaintiff's prospective sales to itself. Nor is it likely that the parties will ever be in competition. Instruction in driving is not a normal field of expansion for a business like the plaintiff's. The relation between the plaintiff's and the defendant's markets in Benrose Fabrics Corp. v. Rosenstein, 7 Cir., 183 F.2d 355, (fabrics for wearing apparel and similar fabrics for home furnishings) was much closer than that of the present case.

The plaintiff owns an insurance company (not a party to this action) which uses the name, but the defendant does not sell insurance and the insurance company does not operate any driving schools. As an adjunct to its insurance business, the insurance company grants scholarships in colleges for the education of high school teachers so that they can in turn instruct youthful drivers. It does this through what it calls a "foundation", but neither the insurance company nor the foundation operates any driving schools of its own. The idea is to establish driving courses in high schools. The insurance company's interest is, of course, discernible, but the project is non-profit and properly described as charitable, and I do not think that a person can expand the area of potential competition within which his trade name will be protected by establishing a charitable project under that name and then carrying that charitable organization's activities into the general field in which the defendant operates.

In the absence of any possibility of loss through competition on the part of the defendant, the plaintiff seeks to support its right to an injunction upon two theories, which may be referred to as "disrepute" and "dilution".

As to the first, under which protection is extended on the ground of possible injury to the plaintiff's goodwill through the sale of inferior products by the defendant even in the absence of

competition: the Restatement, referring to non-competing goods, gives the rule (§ 730, comment b.) as follows: "The issue in each case is whether the goods, services or businesses of the actor (alleged infringer) and of the other are sufficiently related so that the alleged infringement would subject the good-will and reputation of the other's trade-mark or trade name to the hazards of the actor's business." In other words, are the non-competing businesses so closely akin that the alleged infringer's business is in the normal field of expansion of the other's, so that customers will be likely to assume that the goods or services of the two parties come from the same source?

A leading case, illustrative of the sort of thing which will give the plaintiff the right to protection by injunction is Wall v. Rolls-Royce of America, 3 Cir., 4 F.2d 333, 334,—automobiles and radio tubes. There was the strongest kind of evidence that the defendant adopted the name with "but one object in view", namely, to make people think that his radio tubes were made by the Rolls-Royce Company, a matter as to which there is no evidence whatever in the present case. A case illustrating a situation in which protection will not be extended is Certain-Teed Products Corp. v. Philadelphia & Sub. Mortg. G. Co., 3 Cir., 49 F.2d 114 —building materials and guaranteed mortgages.

The Restatement, § 731, sets out a number of factors to be considered in determining whether one's interest in a trade name is protected against its use in a non-competing business, but the list cannot be used as a rigid test. Each case presents a new problem. Obviously, there is a limit. If someone devised a system of bidding at contract bridge and called it the "Allstate System", it could hardly be contended that the plaintiff could restrain him on the ground of confusion of source, even though a few people might conceivably think that the system was promulgated by Sears, Roebuck. The present case, of course, comes closer to the line, but I think it is well

outside the limits of protection. In other words, I do not think it at all likely that, even if a learner thinks that Sears, Roebuck has something to do with the defendant's driving school, he would be deterred from purchasing Allstate automobile parts if his instruction should prove unsatisfactory.

There remains the "dilution" theory which is, in substance, that unless the plaintiff can prevent the use of his trade name by anyone in any kind of business it will lose some of its advertising value. I doubt that this theory has crystallized into law but, in any event, it would have to be limited rather strictly to fanciful, unique and meaningless coined words. As pointed out in the Certain-Teed case, supra, the word "certainteed", while not to be found in the dictionary, is by no means meaningless. So with "Allstate". The word can be used in conversation or literature as applied to any nationwide business or activity, without the slightest sense of incongruity. Besides, the defendant does not actually use the plaintiff's coined word but its components, which are two ordinary English words, and which could be descriptive of a business like his if his course of instruction included rules and traffic regulations of states other than Pennsylvania. It is hard to see how the plaintiff could prevent the use of the words "all state" in connection with a book of road maps covering the United States or a pamphlet containing the automobile laws of all the states. It seems to me that when a person chooses a trade name which has a perfectly intelligible meaning and can be used naturally in all sorts of connotations and is, therefore, inevitably subject to "dilution",—in fact already diluted when chosen—the person who adopts it, while he can, of course, restrain its use on various grounds under the principles heretofore discussed, cannot very well stand upon the sole theory of "dilution".

Judgment may be entered for the defendant.